No. 22-50337

# In the United States Court of Appeals for the Fifth Circuit

NATIONAL PRESS PHOTOGRAPHERS ASSOCIATION; TEXAS PRESS ASSOCIATION; JOSEPH PAPPALARDO,

*Plaintiffs-Appellees/Cross-Appellants*,

*v.*

STEVEN MCCRAW, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE TEXAS DEPARTMENT OF PUBLIC SAFETY; DWIGHT MATHIS IN HIS OFFICIAL CAPACITY AS CHIEF OF THE TEXAS HIGHWAY PATROL; WES MAU, IN HIS OFFICIAL CAPACITY AS DISTRICT ATTORNEY OF HAYS COUNTY, TEXAS,

*Defendants-Appellants/Cross-Appellees.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

## RECORD EXCERPTS FOR STATE DEFENDANTS-APPELLANTS/CROSS-APPELLEES

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

JUDD E. STONE II
Solicitor General

LANORA C. PETTIT
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

CODY RUTOWSKI
Assistant Solicitor General

Counsel for State Defendants-Appellants/Cross-Appellees

# Table of Contents

1. Docket sheet (ROA.1-16) ................................................... Tab 1
2. Notice of appeal (ROA.1388-89).................................... Tab 2
3. Order (ROA.1219-50) ...................................................... Tab 3
4. Final Judgment (ROA.1264) ......................................... Tab4

Tab 1: Docket Sheet (ROA.1-16)

# U.S. District Court [LIVE]
## Western District of Texas (Austin)
## CIVIL DOCKET FOR CASE #: 1:19-cv-00946-RP

National Press Photographers Association et al v. McCraw et al
Assigned to: Judge Robert Pitman
Case in other court:  USCA 5th, 22-50337
                              USCA 5th, 22-50337
Cause: 28:1983 Civil Rights

Date Filed: 09/26/2019
Date Terminated: 04/13/2022
Jury Demand: None
Nature of Suit: 950 Constitutional - State Statute
Jurisdiction: Federal Question

**Plaintiff**

**National Press Photographers Association**

represented by **David A. Schulz**
Media Freedom & Information Access Clinic, Yale Law School
127 Wall Street
New Haven, CT 06511
203-436-5828
Fax: 203-432-3034
Email: david.schulz@yale.edu
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Francesca L. Procaccini**
Media Freedom & Information Access Clinic, Yale Law School
127 Wall Street
New Haven, CT 06511
203-436-5828
Fax: 203-432-3034
Email: francesca.procaccini@yale.edu
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Pinsof**
Media Freedom & Information Access Clinic, Yale Law School
127 Wall Street
New Haven, CT 06511
203-436-5836
Fax: 203-432-3034
Email: jennifer.pinsof@yale.edu
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leah M. Nicholls**
Public Justice, P.C.
1620 L Street NW, Suite 630
Washington, DC 20036
202-797-8600

Fax: 202-232-7203
Email: lnicholls@publicjustice.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie A. Brueckner**
Public Justice, P.C.
475 14th Street, Suite 610
Oakland, CA 94612
510-622-8205
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mickey H. Osterreicher**
Finnerty Osterreicher & Abdulla
70 Niagara Street
Buffalo, NY 14202
(716) 340-2200
Fax: (716) 608-1509
Email: mho@foalegal.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Alicia Wagner Calzada**
12023 Radium, Suite B1
San Antonio, TX 78216
2108251449
Email: alicia@calzadalegal.com
*ATTORNEY TO BE NOTICED*

**James A. Hemphill**
Graves, Dougherty, Hearon & Moody, PC
401 Congress Ave.
Suite 2700
Austin, TX 78701-3587
(512)480-5600
Fax: 512/536-9907
Email: jhemphill@gdhm.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Texas Press Association**                    represented by    **David A. Schulz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Francesca L. Procaccini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Pinsof**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leah M. Nicholls**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie A. Brueckner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mickey H. Osterreicher**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James A. Hemphill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Joseph Pappalardo**                    represented by   **David A. Schulz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Francesca L. Procaccini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Pinsof**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leah M. Nicholls**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie A. Brueckner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mickey H. Osterreicher**
(See above for address)
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James A. Hemphill**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **Steven McCraw**<br>*in his official capacity as Director of Texas Department of Public Safety* | represented by | **Christopher D. Hilton**<br>Office of the Attorney General of Texas<br>P O Box 12548<br>Capital Station<br>Austin, TX 78701<br>512-463-2120<br>Fax: 512-320-0667<br>Email: christopher.hilton@oag.texas.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Heather Lee Dyer**<br>Office of the Attorney General<br>P 0 Box 12548, Capital Station<br>Austin, TX 78711<br>(512) 936-1340<br>Fax: (512) 370-9814<br>Email: heather.dyer@oag.texas.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Ron Joy**<br>*in his official capacity as Chief of the Texas Highway Patrol* | represented by | **Christopher D. Hilton**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Heather Lee Dyer**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Wes Mau**<br>*in his official capacity as District Attorney of Hays County, Texas* | represented by | **Eric Alexander Johnston**<br>McGinnis Lochridge LLP<br>1111 W. 6th St., Bldg. B, Ste. 400<br>Austin, TX 78703<br>United Sta<br>(512) 495-6000<br>Fax: (512) 495-6093<br>Email: ejohnston@mcginnislaw.com |

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ethan Jacob Ranis**
Almanza, Blackburn, Dickie & Mitchell
2301 S. Capital of Texas Hwy, Bldg. H-101
Austin, TX 78746
(512) 4474-9486
Email: eranis@abdmlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael A. Shaunessy**
McGinnis Lochridge LLP
1111 W. 6th St., Bldg. B, Ste. 400
Austin, TX 78703
United Sta
512.495.6000
Fax: 512.495.6093
Email: mshaunessy@mcginnislaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Association for Unmanned Vehicle
Systems International**

represented by **Boyd Garriott**
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
202-719-7000
Fax: 202-719-7049
Email: bgarriott@wiley.law
*TERMINATED: 03/01/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua S. Turner**
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
202-719-7000
Fax: 202-719-7049
Email: jturner@wileyrein.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sara M. Baxenberg**
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
202-719-7000
Fax: 202-719-7049
Email: sbaxenberg@wileyrein.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Terry Lane Scarborough**
Hance Scarborough LLP
400 W. 15th Street
Suite 950
Austin, TX 78701
(512) 487-4006
Fax: (512) 482-6891
Email: tscarborough@hslawmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Consumer Technology Association**          represented by   **Robert Kirk**
Wilkinson Barker Knauer, LLP
1800 M Street, NW, Suite 800N
Washington, DC 20036
202-783-4141
Fax: 202-783-5851
Email: rkirk@wbklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Texas Association of Broadcasters**          represented by   **Eric Daniel Wong**
Jackson Walker LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201
214-953-6116
Fax: 214-661-6816
Email: ewong@jw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul C. Watler**
Jackson Walker L.L.P.
2323 Ross Avenue
Suite 600
Dallas, TX 75202
214/953-6069
Fax: 214/661-6669
Email: pwatler@jw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Reporters Committee for Freedom of the**          represented by   **Eric Daniel Wong**
**Press**                                                         (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul C. Watler**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**East Texas Ranch, L.P.**                    represented by  **Michael E. Lovins**
*TERMINATED: 03/28/2022*                                      Lovins Troslcair, PLLC
                                                              1301 S. Capital of Texas Highway
                                                              Building A, Suite 136
                                                              Austin, TX 78746
                                                              (512) 535-1649
                                                              Fax: (512) 519-1238
                                                              Email: Michael@LovinsLaw.com
                                                              *TERMINATED: 03/28/2022*
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/26/2019 | 1 (p.17) | COMPLAINT *for Declaratory and Injunctive Relief* ( Filing fee $ 400 receipt number 0542-12655207). No Summons requested at this time, filed by National Press Photographers Association, Joseph Pappalardo, Texas Press Association. (Attachments: # 1 (p.17) Civil Cover Sheet, # 2 (p.52) Appendix, # 3 (p.58) Appendix, # 4 (p.63) Appendix)(Hemphill, James) (Entered: 09/26/2019) |
| 09/26/2019 | | Case assigned to Judge Robert Pitman. CM WILL NOW REFLECT THE JUDGE INITIALS AS PART OF THE CASE NUMBER. PLEASE APPEND THESE JUDGE INITIALS TO THE CASE NUMBER ON EACH DOCUMENT THAT YOU FILE IN THIS CASE. (td) (Entered: 09/26/2019) |
| 09/26/2019 | | If ordered by the court, all referrals and consents in this case will be assigned to Magistrate Judge Austin. (td) (Entered: 09/26/2019) |
| 09/26/2019 | 2 (p.52) | REQUEST FOR ISSUANCE OF SUMMONS by Joseph Pappalardo, National Press Photographers Association, Texas Press Association. (Hemphill, James) (Entered: 09/26/2019) |
| 09/26/2019 | 3 (p.58) | MOTION to Appear Pro Hac Vice by James A. Hemphill *for David A. Schulz* ( Filing fee $ 100 receipt number 0542-12656595) by on behalf of Joseph Pappalardo, National Press Photographers Association, Texas Press Association. (Hemphill, James) (Entered: 09/26/2019) |
| 09/26/2019 | 4 (p.63) | MOTION to Appear Pro Hac Vice by James A. Hemphill *for Jennifer Pinsof* ( Filing fee $ 100 receipt number 0542-12656652) by on behalf of Joseph Pappalardo, National Press Photographers Association, Texas Press Association. (Hemphill, James) (Entered: 09/26/2019) |
| 09/26/2019 | 5 (p.68) | MOTION to Appear Pro Hac Vice by James A. Hemphill *for Francesca L. Procaccini* ( Filing fee $ 100 receipt number 0542-12656678) by on behalf of Joseph Pappalardo, National Press Photographers Association, Texas Press Association. (Hemphill, James) (Entered: 09/26/2019) |
| 09/26/2019 | 6 (p.73) | |

| | | |
|---|---|---|
| | | MOTION to Appear Pro Hac Vice by James A. Hemphill *for Leah M. Nicholls* ( Filing fee $ 100 receipt number 0542-12656699) by on behalf of Joseph Pappalardo, National Press Photographers Association, Texas Press Association. (Hemphill, James) (Entered: 09/26/2019) |
| 09/26/2019 | 7 (p.79) | Summons Issued as to Steven McCraw, Ron Joy, Wes Mau. (lt) (Entered: 09/26/2019) |
| 09/27/2019 | 8 (p.85) | MOTION to Appear Pro Hac Vice by James A. Hemphill *for Leslie A. Brueckner* ( Filing fee $ 100 receipt number 0542-12658726) by on behalf of Joseph Pappalardo, National Press Photographers Association, Texas Press Association. (Hemphill, James) (Entered: 09/27/2019) |
| 10/03/2019 | 9 (p.90) | ORDER GRANTING 3 (p.58) Motion to Appear Pro Hac Vice as to David A. Schulz. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Robert Pitman. (dm) (Entered: 10/03/2019) |
| 10/03/2019 | 10 (p.91) | ORDER GRANTING 4 (p.63) Motion to Appear Pro Hac Vice as to Jennifer Pinsof. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Robert Pitman. (dm) (Entered: 10/03/2019) |
| 10/03/2019 | 11 (p.92) | ORDER GRANTING 5 (p.68) Motion to Appear Pro Hac Vice as to Francesca L. Procaccini. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Robert Pitman. (dm) (Entered: 10/03/2019) |
| 10/03/2019 | 12 (p.93) | ORDER GRANTING 6 (p.73) Motion to Appear Pro Hac Vice as to Leah M. Nicholls. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Robert Pitman. (dm) (Entered: 10/03/2019) |
| 10/03/2019 | 13 (p.94) | ORDER GRANTING 8 (p.85) Motion to Appear Pro Hac Vice as to Leslie A. Brueckner. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Robert Pitman. (dm) (Entered: 10/03/2019) |
| 10/08/2019 | 14 (p.95) | SUMMONS Returned Executed by National Press Photographers Association, Joseph Pappalardo, Texas Press Association. Ron Joy served on 10/1/2019, answer due 10/22/2019. (Hemphill, James) (Entered: 10/08/2019) |
| 10/08/2019 | 15 (p.97) | SUMMONS Returned Executed by National Press Photographers Association, Joseph Pappalardo, Texas Press Association. Steven McCraw served on 10/1/2019, answer due 10/22/2019. (Hemphill, James) (Entered: 10/08/2019) |
| 10/08/2019 | 16 (p.98) | SUMMONS Returned Executed by National Press Photographers Association, Joseph Pappalardo, Texas Press Association. Wes Mau served on 10/1/2019, answer due 10/22/2019. (Hemphill, James) (Entered: 10/08/2019) |
| 10/22/2019 | 17 (p.99) | |

| | | |
|---|---|---|
| | | Unopposed MOTION for Extension of Time to File Answer re 1 (p.17) Complaint, by Ron Joy, Wes Mau, Steven McCraw. (Attachments: # 1 (p.17) Proposed Order)(Ranis, Ethan) (Entered: 10/22/2019) |
| 10/24/2019 | | Text Order GRANTING 17 (p.99) Motion for Extension of Time to Answer entered by Judge Robert Pitman. Defendants' deadline to file an answer or to otherwise respond to Plaintiffs' complaint is extended to and includes November 5, 2019. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ld) (Entered: 10/24/2019) |
| 10/24/2019 | | Reset Deadlines: Ron Joy answer due 11/5/2019; Wes Mau answer due 11/5/2019; Steven McCraw answer due 11/5/2019. (dm) (Entered: 10/24/2019) |
| 11/05/2019 | 18 (p.106) | Unopposed MOTION for Leave to Exceed Page Limitation by Ron Joy, Wes Mau, Steven McCraw. (Hilton, Christopher) (Entered: 11/05/2019) |
| 11/05/2019 | 19 (p.109) | MOTION to Dismiss by Ron Joy, Wes Mau, Steven McCraw. (Hilton, Christopher) (Entered: 11/05/2019) |
| 11/06/2019 | 20 (p.143) | ATTACHMENT *Proposed Order* to 18 (p.106) Unopposed MOTION for Leave to Exceed Page Limitation by Ron Joy, Wes Mau, Steven McCraw. (Hilton, Christopher) (Entered: 11/06/2019) |
| 11/06/2019 | | Text Order GRANTING 18 (p.106) Motion for Leave to File Excess Pages entered by Judge Robert Pitman. Defendants' Motion to Dismiss is limited to no more than 32 pages. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ld) (Entered: 11/06/2019) |
| 11/13/2019 | 21 (p.144) | Unopposed MOTION for Extension of Time to File Response/Reply as to 19 (p.109) MOTION to Dismiss by Joseph Pappalardo, National Press Photographers Association, Texas Press Association. (Attachments: # 1 (p.17) Proposed Order)(Hemphill, James) (Entered: 11/13/2019) |
| 11/14/2019 | | Text Order GRANTING 21 (p.144) Motion for Extension of Time to File Response/Reply entered by Judge Robert Pitman. Plaintiffs shall file a response to Defendants' motion to dismiss on or before December 3, 2019. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ld) (Entered: 11/14/2019) |
| 12/03/2019 | 22 (p.148) | Unopposed MOTION for Leave to Exceed Page Limitation by Joseph Pappalardo, National Press Photographers Association, Texas Press Association. (Attachments: # 1 (p.17) Proposed Order)(Hemphill, James) (Entered: 12/03/2019) |
| 12/03/2019 | 23 (p.152) | Response in Opposition to Motion, filed by Joseph Pappalardo, National Press Photographers Association, Texas Press Association, re 19 (p.109) MOTION to Dismiss filed by Defendant Steven McCraw, Defendant Ron Joy, Defendant Wes Mau (Hemphill, James) (Entered: 12/03/2019) |
| 12/04/2019 | | Text Order GRANTING 22 (p.148) Motion for Leave to File Excess Pages entered by Judge Robert Pitman. Plaintiffs' Response shall not exceed 36 pages. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ld) (Entered: 12/04/2019) |
| 12/09/2019 | 24 (p.190) | Unopposed MOTION for Extension of Time to File Response/Reply as to 19 (p.109) MOTION to Dismiss by Ron Joy, Wes Mau, Steven McCraw. (Attachments: # 1 (p.17) Proposed Order)(Hilton, Christopher) (Entered: 12/09/2019) |

| 12/10/2019 | | Text Order GRANTING 24 (p.190) Motion for Extension of Time to File Response/Reply entered by Judge Robert Pitman. Defendants shall file their reply in support of their motion to dismiss, (Dkt. 19 ), on or before December 17, 2019. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ld) (Entered: 12/10/2019) |
|---|---|---|
| 12/17/2019 | 25 (p.197) | REPLY to Response to Motion, filed by Ron Joy, Steven McCraw, re 19 (p.109) MOTION to Dismiss filed by Defendant Steven McCraw, Defendant Ron Joy, Defendant Wes Mau (Hilton, Christopher) (Entered: 12/17/2019) |
| 12/18/2019 | 26 (p.209) | REPLY to Response to Motion, filed by Wes Mau, re 19 (p.109) MOTION to Dismiss filed by Defendant Steven McCraw, Defendant Ron Joy, Defendant Wes Mau (Shaunessy, Michael) (Entered: 12/18/2019) |
| 12/18/2019 | 27 (p.213) | Unopposed MOTION for Extension of Time to File Response/Reply *Reply to Motion to Dismiss* by Wes Mau. (Attachments: # 1 (p.17) Proposed Order)(Shaunessy, Michael) (Entered: 12/18/2019) |
| 12/19/2019 | | Text Order GRANTING 27 (p.213) Motion for Extension of Time to File Response/Reply entered by Judge Robert Pitman. Defendant Wes Mau's deadline to file his Reply to the pending Motion to Dismiss, (Dkt. 19), is extended to December 18, 2019. Accordingly, his Reply, (Dkt. 26), filed on December 18, 2019, shall be considered timely. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ld) (Entered: 12/19/2019) |
| 01/02/2020 | 28 (p.220) | Unopposed MOTION for Leave to File Plaintiff's Sur-Reply to Defendant Wes Mau's Reply by Joseph Pappalardo, National Press Photographers Association, Texas Press Association. (Attachments: # 1 (p.17) Exhibit A, # 2 (p.52) Proposed Order)(Hemphill, James) (Entered: 01/02/2020) |
| 01/03/2020 | | Text Order GRANTING 28 (p.220) Motion for Leave to File entered by Judge Robert Pitman. Plaintiffs are granted leave to file the sur-reply attached as an exhibit to their unopposed motion. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ld) (Entered: 01/03/2020) |
| 01/03/2020 | 29 (p.232) | Sur-reply to Motion, filed by Joseph Pappalardo, National Press Photographers Association, Texas Press Association, re 19 (p.109) MOTION to Dismiss filed by Defendant Steven McCraw, Defendant Ron Joy, Defendant Wes Mau (dm) (Entered: 01/03/2020) |
| 01/09/2020 | 30 (p.240) | Order for Proposed Scheduling Order. Proposed scheduling order due to the Court within sixty (60) days after the appearance of any defendant. Proposed Scheduling Order due by 1/16/2020,. Signed by Judge Robert Pitman. (dm) (Entered: 01/10/2020) |
| 01/10/2020 | 31 (p.242) | MOTION to Appear Pro Hac Vice by Terry Lane Scarborough (*Joshua S. Turner*) ( Filing fee $ 100 receipt number 0542-13062051) by on behalf of Association for Unmanned Vehicle Systems International. (Attachments: # 1 (p.17) Supplement to Motion for Admission Pro Hac Vice - Joshua S. Turner, # 2 (p.52) Proposed Order Granting Motion for Admission Pro Hac Vice - Joshua S. Turner)(Scarborough, Terry) (Entered: 01/10/2020) |
| 01/10/2020 | 32 (p.248) | MOTION to Appear Pro Hac Vice by Terry Lane Scarborough (*Sara M. Baxenberg*) ( Filing fee $ 100 receipt number 0542-13062146) by on behalf of Association for Unmanned Vehicle Systems International. (Attachments: # 1 (p.17) Supplement to Motion for Admission Pro Hac Vice - Sara M. Baxenberg, # 2 (p.52) Proposed |

| | | |
|---|---|---|
| | | Order Granting Motion for Admission Pro Hac Vice - Sara M. Baxenberg)(Scarborough, Terry) (Entered: 01/10/2020) |
| 01/10/2020 | 33 (p.254) | MOTION to Appear Pro Hac Vice by Terry Lane Scarborough *(Boyd Garriott)* ( Filing fee $ 100 receipt number 0542-13062186) by on behalf of Association for Unmanned Vehicle Systems International. (Attachments: # 1 (p.17) Proposed Order Granting Motion for Admission Pro Hac Vice - Boyd Garriott)(Scarborough, Terry) (Entered: 01/10/2020) |
| 01/10/2020 | 34 (p.259) | MOTION to Appear Pro Hac Vice by Terry Lane Scarborough *(Robert Kirk)* ( Filing fee $ 100 receipt number 0542-13062262) by on behalf of Consumer Technology Association. (Attachments: # 1 (p.17) Supplement to Motion for Admission Pro Hac Vice - Robert Kirk, # 2 (p.52) Proposed Order Granting Motion for Admission Pro Hac Vice - Robert Kirk)(Scarborough, Terry) (Entered: 01/10/2020) |
| 01/10/2020 | 35 (p.265) | MOTION for Leave to File Amicus Brief by Terry L. Scarborough. by Association for Unmanned Vehicle Systems International, Consumer Technology Association. (Attachments: # 1 (p.17) Exhibit 1 - Brief of Amicus Curiae, # 2 (p.52) Proposed Order Granting Motion for Leave to File Amicus Curiae Brief)(Scarborough, Terry) (Entered: 01/10/2020) |
| 01/16/2020 | 36 (p.290) | NOTICE of Filing Agreed Scheduling Order by Joseph Pappalardo, National Press Photographers Association, Texas Press Association (Attachments: # 1 (p.17) Exhibit)(Hemphill, James) (Entered: 01/16/2020) |
| 01/24/2020 | 37 (p.296) | ORDER GRANTING 31 (p.242) Motion to Appear Pro Hac Vice as to Joshua S. Turner. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Robert Pitman. (dm) (Entered: 01/24/2020) |
| 01/24/2020 | 38 (p.297) | ORDER GRANTING 32 (p.248) Motion to Appear Pro Hac Vice as to Sara M. Baxenberg. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Robert Pitman. (dm) (Entered: 01/24/2020) |
| 01/24/2020 | 39 (p.298) | ORDER GRANTING 33 (p.254) Motion to Appear Pro Hac Vice as to Boyd Garriott. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Robert Pitman. (dm) (Entered: 01/24/2020) |
| 01/24/2020 | 40 (p.299) | ORDER GRANTING 34 (p.259) Motion to Appear Pro Hac Vice as to Robert Kirk. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Robert Pitman. (dm) (Entered: 01/24/2020) |
| 01/24/2020 | 41 (p.300) | ORDER, ( Initial Pretrial Conference set for 2/3/2020 at 01:30 PM before Judge Robert Pitman,). Signed by Judge Robert Pitman. (dm) (Entered: 01/24/2020) |
| 02/03/2020 | | Text Order GRANTING 35 (p.265) Motion for Leave to File Amicus Brief entered by Judge Robert Pitman. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ld) (Entered: 02/03/2020) |

| 02/03/2020 | 42 (p.302) | BRIEF by Association for Unmanned Vehicle Systems International, Consumer Technology Association. (dm) (Entered: 02/03/2020) |
|---|---|---|
| 02/03/2020 | 43 | Minute Entry for proceedings held before Judge Robert Pitman: Initial Pretrial Conference held on 2/3/2020 (Minute entry documents are not available electronically.). (Court Reporter Pamela Andasola.)(td) (Entered: 02/03/2020) |
| 02/03/2020 | 44 (p.320) | SCHEDULING ORDER: Bench Trial set for 10/25/2021 09:00 AM before Judge Robert Pitman, ADR Report Deadline due by 11/20/2020, Amended Pleadings due by 10/30/2020, Discovery due by 4/30/2021, Joinder of Parties due by 10/30/2020, Motions due by 6/25/2021. Signed by Judge Robert Pitman. (td) (Entered: 02/03/2020) |
| 02/27/2020 | 45 (p.324) | ADVISORY TO THE COURT by Joseph Pappalardo, National Press Photographers Association, Texas Press Association. (Attachments: # 1 (p.17) Exhibit)(Hemphill, James) (Entered: 02/27/2020) |
| 03/25/2020 | 46 (p.379) | Emergency Order in Light of the COVID-19 Pandemic (tada) (Entered: 03/25/2020) |
| 04/17/2020 | 47 (p.383) | Amended Emergency Order in Light of the COVID-19 Pandemic (Entered: 04/17/2020) |
| 06/23/2020 | 48 (p.387) | Second Amended Emergency Order in Light of the COVID-19 Pandemic (Entered: 06/23/2020) |
| 11/20/2020 | 49 (p.391) | ADR Report Filed - *Joint Report on Alternative Dispute Resolution* by Joseph Pappalardo, National Press Photographers Association, Texas Press Association(Powers, Matthew) (Entered: 11/20/2020) |
| 11/20/2020 | 50 (p.394) | NON-CONSENT to Trial by US Magistrate Judge by Joseph Pappalardo, National Press Photographers Association, Texas Press Association. (Powers, Matthew) (Entered: 11/20/2020) |
| 11/20/2020 | 51 (p.395) | NON-CONSENT to Trial by US Magistrate Judge by Ron Joy, Steven McCraw. (Hilton, Christopher) (Entered: 11/20/2020) |
| 11/30/2020 | 52 (p.396) | ORDER GRANTING IN PART AND DENYING IN PART 19 (p.109) Motion to Dismiss. Signed by Judge Robert Pitman. (dm) (Entered: 11/30/2020) |
| 12/11/2020 | 53 (p.425) | Unopposed MOTION for Extension of Time to File Answer re 1 (p.17) Complaint, *for all Defendants* by Ron Joy, Steven McCraw. (Attachments: # 1 (p.17) Proposed Order)(Hilton, Christopher) (Entered: 12/11/2020) |
| 12/14/2020 | | Text Order GRANTING 53 (p.425) Unopposed Motion for Extension of Time to Answer entered by Judge Robert Pitman. Defendants shall answer or otherwise respond to Plaintiffs' complaint on or before January 13, 2021. (This is a text-only entry generated by the court. There is no document associated with this entry.) (fw) (Entered: 12/14/2020) |
| 12/14/2020 | | Reset Deadlines: Ron Joy answer due 1/13/2021; Wes Mau answer due 1/13/2021; Steven McCraw answer due 1/13/2021. (dm) (Entered: 12/14/2020) |
| 01/13/2021 | 54 (p.430) | ANSWER to 1 (p.17) Complaint, *by all Defendants* by Ron Joy, Steven McCraw.(Hilton, Christopher) (Entered: 01/13/2021) |
| 02/19/2021 | 55 | Rule 26(f) Discovery Report/Case Management Plan *Joint Report* by National Press |

| | (p.451) | Photographers Association. (Hemphill, James) (Entered: 02/19/2021) |
|---|---|---|
| 02/26/2021 | 56 (p.455) | Unopposed MOTION to Withdraw as Attorney *(Boyd Garriott)* by Association for Unmanned Vehicle Systems International. (Attachments: # 1 (p.17) Proposed Order Granting Motion to Withdraw - B. Garriott)(Scarborough, Terry) (Entered: 02/26/2021) |
| 03/01/2021 | 57 (p.459) | ORDER GRANTING 56 (p.455) Motion to Withdraw as Attorney. Signed by Judge Robert Pitman. (dm) (Entered: 03/01/2021) |
| 06/22/2021 | 58 (p.460) | Joint MOTION to Extend Scheduling Order Deadlines by Ron Joy, Wes Mau, Steven McCraw. (Attachments: # 1 (p.17) Proposed Order)(Hilton, Christopher) (Entered: 06/22/2021) |
| 06/23/2021 | 59 (p.465) | ORDER GRANTING 58 (p.460) Motion to Extend Scheduling Order Deadlines. Dispositive Motions due by 7/9/2021. Signed by Judge Robert Pitman. (dm) (Entered: 06/23/2021) |
| 07/02/2021 | 60 (p.466) | PARTIALLY OPPOSED MOTION to Intervene by East Texas Ranch, L.P.. (Attachments: # 1 (p.17) Complaint in Intervention, # 2 (p.52) Motion for Summary Judgment, # 3 (p.58) Proposed Order)(dm) (Entered: 07/02/2021) |
| 07/08/2021 | 61 (p.514) | MOTION to Appear Pro Hac Vice by James A. Hemphill *for Mickey H. Osterreicher* ( Filing fee $ 100 receipt number 0542-14990223) by on behalf of National Press Photographers Association. (Hemphill, James) (Entered: 07/08/2021) |
| 07/09/2021 | 62 (p.519) | NOTICE of Attorney Appearance by Alicia Wagner Calzada on behalf of National Press Photographers Association. Attorney Alicia Wagner Calzada added to party National Press Photographers Association(pty:pla) (Calzada, Alicia) (Entered: 07/09/2021) |
| 07/09/2021 | 63 (p.520) | MOTION for Summary Judgment - *Plaintiffs* by National Press Photographers Association. (Hemphill, James) (Entered: 07/09/2021) |
| 07/09/2021 | 64 (p.702) | Response in Opposition to Motion, filed by National Press Photographers Association, re 60 (p.466) MOTION to Intervene filed by Movant East Texas Ranch, L.P. (Attachments: # 1 (p.17) Proposed Order)(Hemphill, James) (Entered: 07/09/2021) |
| 07/09/2021 | 65 (p.707) | MOTION for Summary Judgment *by all Defendants* by Ron Joy, Steven McCraw. (Attachments: # 1 (p.17) Exhibit A, # 2 (p.52) Exhibit B, # 3 (p.58) Exhibit C, # 4 (p.63) Exhibit D, # 5 (p.68) Exhibit E, # 6 (p.73) Exhibit F, # 7 (p.79) Exhibit G, # 8 (p.85) Exhibit H, # 9 (p.90) Exhibit I, # 10 (p.91) Exhibit J, # 11 (p.92) Exhibit K, # 12 (p.93) Exhibit L)(Hilton, Christopher) (Entered: 07/09/2021) |
| 07/15/2021 | | Text Order GRANTING 61 (p.514) Motion to Appear Pro Hac Vice by attorney Mickey H. Osterreicher. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. entered by Judge Robert Pitman. (This is a text-only entry generated by the court. There is no document associated with this entry.) (jg) (Entered: 07/15/2021) |
| 07/16/2021 | 66 (p.1072) | REPLY to Response to Motion, filed by East Texas Ranch, L.P., re 60 (p.466) MOTION to Intervene filed by Movant East Texas Ranch, L.P. (Lovins, Michael) (Entered: 07/16/2021) |
| 08/09/2021 | | |

| | | |
|---|---|---|
| | 67 (p.1078) | Response in Opposition to Motion, filed by National Press Photographers Association, re 65 (p.707) MOTION for Summary Judgment *by all Defendants* filed by Defendant Steven McCraw, Defendant Ron Joy (Hemphill, James) (Entered: 08/09/2021) |
| 08/09/2021 | 68 (p.1103) | Response in Opposition to Motion, filed by Ron Joy, Steven McCraw, re 63 (p.520) MOTION for Summary Judgment - *Plaintiffs* filed by Plaintiff National Press Photographers Association (Hilton, Christopher) (Entered: 08/09/2021) |
| 08/16/2021 | | If ordered by the court, all referrals and consents in this case will be assigned to Magistrate Judge Dustin M. Howell. (jkda) (Entered: 08/19/2021) |
| 08/23/2021 | 69 (p.1138) | REPLY to Response to Motion, filed by National Press Photographers Association, re 63 (p.520) MOTION for Summary Judgment - *Plaintiffs* filed by Plaintiff National Press Photographers Association (Hemphill, James) (Entered: 08/23/2021) |
| 08/23/2021 | 70 (p.1165) | REPLY to Response to Motion, filed by Ron Joy, Steven McCraw, re 65 (p.707) MOTION for Summary Judgment *by all Defendants* filed by Defendant Steven McCraw, Defendant Ron Joy (Hilton, Christopher) (Entered: 08/23/2021) |
| 09/23/2021 | 71 (p.1185) | MOTION for Leave to File Amicus Brief by Texas Association of Broadcasters, Reporters Committee for Freedom of the Press. (Attachments: # 1 (p.17) Exhibit A, # 2 (p.52) Exhibit B, # 3 (p.58) Proposed Order)(dm) (Entered: 09/23/2021) |
| 10/15/2021 | 72 (p.1215) | ORDER Cancelling Bench Trial. Signed by Judge Robert Pitman. (dm) (Entered: 10/15/2021) |
| 03/11/2022 | 73 (p.1216) | Sur-reply to Motion, filed by Joseph Pappalardo, National Press Photographers Association, re 63 (p.520) MOTION for Summary Judgment - *Plaintiffs* filed by Plaintiff National Press Photographers Association *Plaintiffs' Correction of Citation* (Hemphill, James) (Entered: 03/11/2022) |
| 03/28/2022 | 74 (p.1219) | ORDER DENYING 60 (p.466) Motion to Intervene; GRANTING 63 (p.520) Motion for Summary Judgment; DENYING 65 (p.707) Motion for Summary Judgment; GRANTING 71 (p.1185) Motion for Leave to File Amicus Brief. Signed by Judge Robert Pitman. (dm) (Entered: 03/29/2022) |
| 03/29/2022 | 75 (p.1251) | AMICUS BRIEF by Reporters Committee for Freedom of the Press, Texas Association of Broadcasters. (dm) (Entered: 03/29/2022) |
| 04/13/2022 | 76 (p.1264) | FINAL JUDGMENT. ORDER that the case is CLOSED. ORDER that Plaintiffs shall file a motion for attorneys fees and a bill of costs, if any, no later than 04/27/22. Signed by Judge Robert Pitman. (klw) (Entered: 04/13/2022) |
| 04/27/2022 | 77 (p.1265) | MOTION for Attorney Fees *and Costs - Plaintiffs* by National Press Photographers Association. (Hemphill, James) (Entered: 04/27/2022) |
| 04/28/2022 | 78 (p.1388) | Appeal of Final Judgment 76 (p.1264) by Ron Joy, Steven McCraw. ( Filing fee $ 505 receipt number 0542-15979527) (Hilton, Christopher) (Entered: 04/28/2022) |
| 04/28/2022 | | NOTICE OF APPEAL following 78 (p.1388) Notice of Appeal (E-Filed) by Ron Joy, Steven McCraw. Filing fee $ 505, receipt number 0542-15979527. Per 5th Circuit rules, the appellant has 14 days, from the filing of the Notice of Appeal, to order the transcript. To order a transcript, the appellant should fill out a (Transcript Order) and follow the instructions set out on the form. This form is available in the Clerk's Office or by clicking the hyperlink above. (dm) (Entered: 04/29/2022) |

| | | |
|---|---|---|
| 05/11/2022 | 79 (p.1390) | Agreed MOTION for Extension of Time to File Response/Reply as to 77 (p.1265) MOTION for Attorney Fees *and Costs - Plaintiffs* by Ron Joy, Wes Mau, Steven McCraw. (Attachments: # 1 (p.17) Proposed Order)(Shaunessy, Michael) (Entered: 05/11/2022) |
| 05/12/2022 | | Text Order GRANTING 79 (p.1390) Agreed Motion for Extension of Time to File Response/Reply entered by Judge Robert Pitman. IT IS ORDERED that Defendants shall respond to Plaintiffs' Motion for Attorney's Fees and Costs, (Dkt. 77), no later than June 10, 2022. (This is a text-only entry generated by the court. There is no document associated with this entry.) (mplc) (Entered: 05/12/2022) |
| 05/12/2022 | 80 (p.1397) | NOTICE *Plaintiffs' Notice of Cross-Appeal* by Joseph Pappalardo, National Press Photographers Association re 52 (p.396) Order on Motion to Dismiss (Hemphill, James) (Entered: 05/12/2022) |
| 05/13/2022 | 81 (p.1400) | Appeal of Final Judgment 76 (p.1264) , 74 (p.1219) by Wes Mau. ( Filing fee $ 505 receipt number 0542-16030120) (Shaunessy, Michael) (Entered: 05/13/2022) |
| 05/13/2022 | | NOTICE OF APPEAL following 81 (p.1400) Notice of Appeal (E-Filed) by Wes Mau. Filing fee $ 505, receipt number 0542-16030120. Per 5th Circuit rules, the appellant has 14 days, from the filing of the Notice of Appeal, to order the transcript. To order a transcript, the appellant should fill out a (Transcript Order) and follow the instructions set out on the form. This form is available in the Clerk's Office or by clicking the hyperlink above. (dm) (Entered: 05/13/2022) |
| 05/13/2022 | 82 (p.1402) | Cross Appeal of Order entered by District Judge 52 (p.396) by Joseph Pappalardo, National Press Photographers Association and Texas Press Association. No filing fee submitted (Hemphill, James) Modified on 6/22/2022 to add filer (dm). (Entered: 05/13/2022) |
| 05/13/2022 | | NOTICE OF APPEAL following 82 (p.1402) Notice of Cross Appeal (E-Filed) by Joseph Pappalardo, National Press Photographers Association. (No Filing Fee Submitted). Per 5th Circuit rules, the appellant has 14 days, from the filing of the Notice of Appeal, to order the transcript. To order a transcript, the appellant should fill out a (Transcript Order) and follow the instructions set out on the form. This form is available in the Clerk's Office or by clicking the hyperlink above. (dm) (Entered: 05/13/2022) |
| 05/16/2022 | 83 (p.1405) | MOTION for Extension of Time to File *Notice of Appeal* by Wes Mau. (Attachments: # 1 (p.17) Proposed Order)(Shaunessy, Michael) (Entered: 05/16/2022) |
| 05/17/2022 | 84 (p.1417) | ADVISORY TO THE COURT by Wes Mau . (Shaunessy, Michael) (Entered: 05/17/2022) |
| 05/17/2022 | 85 (p.1420) | TRANSCRIPT REQUEST by Ron Joy, Steven McCraw for dates of n/a. Proceedings Transcribed: n/a. Court Reporter: n/a.. (Hilton, Christopher) (Entered: 05/17/2022) |
| 05/18/2022 | | Text Order GRANTING 83 (p.1405) Motion for Extension of Time to File entered by Judge Robert Pitman. In light of there being no opposition, (see Dkt. 84), and for good cause shown, IT IS ORDERED that Defendant Wes Mau's Motion for Extension of Time to File Notice of Appeal, (Dkt. 83), is GRANTED. Defendant's Notice of Appeal, (Dkt. 81), shall be considered timely. (This is a text-only entry generated by the court. There is no document associated with this entry.) (mplc) (Entered: 05/18/2022) |

| 05/23/2022 | 86 | Filing fee received in the amount of $402, receipt number 0542-16064325. (Hemphill, James) (Entered: 05/23/2022) |
|---|---|---|
| 06/10/2022 | 87 (p.1422) | NOTICE of Attorney Appearance by Heather Lee Dyer on behalf of Ron Joy, Steven McCraw. Attorney Heather Lee Dyer added to party Ron Joy(pty:dft), Attorney Heather Lee Dyer added to party Steven McCraw(pty:dft) (Dyer, Heather) (Entered: 06/10/2022) |
| 06/10/2022 | 88 (p.1425) | Response in Opposition to Motion, filed by Wes Mau, re 77 (p.1265) MOTION for Attorney Fees *and Costs - Plaintiffs* filed by Plaintiff National Press Photographers Association (Attachments: # 1 (p.17) Exhibit A, # 2 (p.52) Exhibit B, # 3 (p.58) Exhibit C, # 4 (p.63) Exhibit D)(Shaunessy, Michael) (Entered: 06/10/2022) |
| 06/10/2022 | 89 (p.1528) | RESPONSE to Motion, filed by Ron Joy, Steven McCraw, re 77 (p.1265) MOTION for Attorney Fees *and Costs - Plaintiffs* filed by Plaintiff National Press Photographers Association (Attachments: # 1 (p.17) Exhibit A, # 2 (p.52) Proposed Order)(Hilton, Christopher) (Entered: 06/10/2022) |
| 06/16/2022 | 90 (p.1553) | Joint MOTION for Extension of Time to File Response/Reply as to 77 (p.1265) MOTION for Attorney Fees *and Costs - Plaintiffs* by Joseph Pappalardo, National Press Photographers Association. (Attachments: # 1 (p.17) Proposed Order)(Hemphill, James) (Entered: 06/16/2022) |
| 06/17/2022 | | Text Order GRANTING 90 (p.1553) Unopposed Motion for Extension of Time to File Response/Reply entered by Judge Robert Pitman. IT IS ORDERED that Plaintiffs shall file their reply, if any, in support of their Motion for Attorneys' Fees and Costs, (Dkt. 77), and the State Defendants shall file their reply, if any to Defendant Mau's Response, (Dkt. 88), no later than June 30, 2022. (This is a text-only entry generated by the court. There is no document associated with this entry.) (mplc) (Entered: 06/17/2022) |
| 06/17/2022 | 91 (p.1558) | USCA Appeal Fees received $ 505 receipt number 168 re Notice of Appeal, filed by National Press Photographers Association, Joseph Pappalardo and Texas Press Association. (dm) Modified on 6/22/2022 to add filer (dm). (Entered: 06/21/2022) |
| 06/30/2022 | 92 (p.1559) | REPLY to Response to Motion, filed by Ron Joy, Steven McCraw, re 77 (p.1265) MOTION for Attorney Fees *and Costs - Plaintiffs* filed by Plaintiff National Press Photographers Association (Attachments: # 1 (p.17) Proposed Order)(Dyer, Heather) (Entered: 06/30/2022) |
| 06/30/2022 | 93 (p.1568) | REPLY to Response to Motion, filed by Joseph Pappalardo, National Press Photographers Association, re 77 (p.1265) MOTION for Attorney Fees *and Costs - Plaintiffs* filed by Plaintiff National Press Photographers Association (Hemphill, James) (Entered: 06/30/2022) |

Tab 2: Notice of Appeal (ROA.1388-89)

# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| NATIONAL PRESS PHOTOGRAPHERS ASSOCIATION, TEXAS PRESS ASSOCIATION, and JOSEPH PAPPALARDO, Plaintiffs, | § § § § § | |
| v. | § § § | CIVIL ACTION NO. 1:19-CV-00946-RP |
| STEVEN MCCRAW, in his official capacity as Director of Texas Department of Public Safety, DWIGHT MATHIS, in his official capacity as Chief of the Texas Highway Patrol, and WES MAU, in his official capacity as District Attorney of Hays County, Texas, Defendants. | § § § § § § § § | |

## STATE DEFENDANTS' NOTICE OF APPEAL

Pursuant to the Federal Rules of Appellate Procedure, the State Defendants Steven McCraw, in his official capacity as Director of the Texas Department of Public Safety, and Dwight Mathis, in his official capacity as Chief of the Texas Highway Patrol, hereby give this notice of appeal to the United States Court of Appeals for the Fifth Circuit from the district court's Final Judgment (ECF No. 76), entered April 13, 2022; the district court's Order (ECF No. 74), entered March 29, 2022; and all other appealable issues and interlocutory orders that have merged into the Final Judgment.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

*/s/ Christopher D. Hilton*
CHRISTOPHER D. HILTON
Texas Bar No. 24087727
So. District No. 3029796
Assistant Attorney General
Chief, General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 Fax
christopher.hilton@oag.texas.gov

**Counsel for the State Defendants, Steven McCraw and Dwight Mathis**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via the Court's ECF system on April 28, 2022, to all counsel of record.

*/s/ Christopher D. Hilton*
Christopher D. Hilton

Tab 3: Order (ROA.1219-50)

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NATIONAL PRESS PHOTOGRAPHERS ASSOCIATION, TEXAS PRESS ASSOCIATION, and JOSEPH PAPPALARDO, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § | 1:19-CV-946-RP |
| STEVEN MCCRAW, *in his official capacity as Director of Texas Department of Public Safety*; DWIGHT MATHIS, *in his official capacity as Chief of the Texas Highway Patrol*; and WES MAU, *in his official capacity as District Attorney of Hays County, Texas*, | § § § § § § § | |
| Defendants. | § § | |

## **ORDER**

Before the Court are cross-motions for summary judgment filed by Plaintiffs National Press

Photographers Association ("NPPA"), Texas Press Association ("TPA"), and Joseph Pappalardo's

("Pappalardo") (collectively, "Plaintiffs"), (Pls.' Mot., Dkt. 63); and Defendants Steven McCraw

("McCraw"), Dwight Mathis ("Mathis"),[1] and Wes Mau's ("Mau") (collectively, "Defendants")

(Defs.' Mot., Dkt. 65); and the parties' respective responsive briefing. Also before the Court are East

Texas Ranch's ("Movant") Motion to Intervene, (Mot. Intervene, Dkt. 60); and Amici Texas

Association of Broadcasters ("TAB") and Reporters Committee for Freedom of the Press's

("RCFP") Motion for Leave to File Amicus Brief, (Mot. Leave, Dkt. 71). Having considered the

parties' arguments, the evidence, and the relevant law, the Court will grant Plaintiffs' motion for

---

[1] In 2020, Mathis replaced predecessor and original Defendant Ron Joy in his role as Chief of Texas Highway Patrol.

22-50337.1219

summary judgment, deny Defendants' motion for summary judgment, deny the motion to intervene, and grant the motion for leave to file an amicus brief.

## I. BACKGROUND

This case concerns journalists' right under the First Amendment to operate unmanned aerial vehicles ("UAVs"), otherwise known as drones, and publish the resulting images. Plaintiffs challenge the constitutionality of two sets of provisions of Chapter 423 of the Texas Government Code ("Chapter 423"), passed in 2013 and amended in 2015. (Pls.' Mot. Summ. J., Dkt. 63, at 15). Plaintiffs allege that the civil and criminal penalties within the Chapter 423 provisions restrict the First Amendment right to newsgathering and speech and chill Plaintiffs and their members from using UAVs for certain newsgathering activities. (*Id.*).

Texas Government Code Sections 423.002, 423.003, 423.004, and 423.006 (together "Surveillance Provisions") impose civil and criminal penalties on UAV image creation. Section 423.003 imposes criminal and civil penalties by declaring it unlawful to use "an unmanned aircraft to capture an image of an individual or privately owned real property . . . with the intent to conduct surveillance on the individual or property captured in the image." TEX. GOV'T CODE § 423.003(a). Under Section 423.006, a landowner or tenant may bring a civil action against a person who violates Section 423.003 or 423.004. TEX. GOV'T CODE § 423.006(a). Section 423.002 exempts certain uses of UAVs from liability under the Surveillance Provisions but does not exempt newsgathering. see TEX. GOV'T CODE § 423.002. Exemptions include "professional or scholarly research and development or . . . on behalf of an institution of higher education." TEX. GOV'T CODE § 423.002(a)(1). Plaintiffs argue that the Surveillance Provisions are unconstitutionally content- and speaker-based because the exemptions in Section 423.002 prohibit or allow the use of UAVs based on the purpose for which the image was captured, the identity of the person capturing the image, or the content of the image. (Pls.' Mot. Summ. J., Dkt. 63, at 10). Plaintiffs also argue that the

22-50337.1220

Surveillance Provisions are unconstitutionally vague and overbroad because the term "surveillance" is not defined. (*Id.* at 11).

Texas Government Code Sections 423.0045 and 423.0046 (together "No-Fly Provisions") impose criminal penalties by making it unlawful to fly UAVs over a "Correctional Facility, Detention Facility, or Critical Infrastructure Facility" or "Sports Venue" at less than 400 feet. TEX. GOV'T CODE § 423.0045, § 423.0046. Critical infrastructure facilities are defined to include oil and gas pipelines, petroleum and alumina refineries, water treatment facilities, and natural gas fractionation and chemical manufacturing plants. TEX. GOV'T CODE § 423.0045(a). In 2017, critical infrastructure was expanded though legislative amendments to include animal feeding operations, oil and gas drilling sites, and chemical production facilities, among others. *Id.* The 2017 amendments also defined a "sports venue" to include any arena, stadium, automobile racetrack, coliseum, or any other facility that has seating capacity of more than 30,000 people and is "primarily used" for one or more professional or amateur sport or athletics events. TEX. GOV'T CODE §§ 423.0045 –046; 2017 Tex. Sess. Law Serv. Ch. 1010 (H.B. 1424) (Vernon's). Plaintiffs contend that when combined with Federal Aviation Administration ("FAA") regulations, which require UAVs to fly below 400 feet, the No-Fly Provisions effectively ban UAVs at the listed locations. (Pls.' Mot. Summ. J., Dkt. 63, at 16); *see* 81 Fed. Reg. 42064, 4206 (June 28, 2016); 14 C.F.R. § 107.1(a).

The No-Fly Provisions exempt certain UAV users, including those with a "commercial purpose." TEX. GOV'T CODE §§ 423.0045(c), 423.0046(c). Plaintiffs argue that allowing UAVs to be used for commercial purposes but not newsgathering purposes constitutes content-based discrimination in violation of the First Amendment. (Pls.' Mot. Summ. J., Dkt. 63, at 11). Plaintiffs allege the No-Fly Provisions are unconstitutionally vague and overbroad because "commercial purpose" is not defined and is understood to exclude newsgathering. (*Id.* at 17). Plaintiffs claim this

22-50337.1221

leaves visual journalists unable to determine if they are permitted to use UAVs under the No-Fly Provisions.

Plaintiffs are one individual journalist and two media organizations. Pappalardo is a Texas reporter who owns a drone and was previously certified to operate a UAV in the national airspace by the FAA. (Pappalardo Decl., Dkt. 63, at 150). Pappalardo states that the Chapter 423 provisions have chilled his newsgathering because he is concerned about liability under its provisions. (*Id.* at 153). Because of the law, he has foregone opportunities to report on "events related to Hurricane Harvey, the removal of homeless encampments, the way gridlock hampers emergency responders, and illegal poaching in urban areas." (Mot. Summ. J., Dkt. 63, at 17; Pappalardo Decl., Pls.' Ex. 5, ¶ 14). He fears that "using a [drone] for journalistic purposes would put [him] at risk of criminal penalties and subject [him] to liability in a civil lawsuit." (Pappalardo Decl., Dkt. 63, at 150).

NPPA is a national organization that represent the interests of visual journalists, including within Texas. (Ramsess Decl., Dkt. 63, at 157). NPPA members include photographers from print, television, and electronic media, including approximately 300 members in Texas. (*Id.*). NPPA promotes the role of visual journalism as a public service and advocates for the work of its visual journalist members. (*Id.* at 159). Plaintiffs allege that NPPA members regularly use UAVs for newsgathering. (*Id.* at 157). Plaintiffs argue that NPPA members' newsgathering is chilled by the Chapter 423 provisions. (Pls.' Mot. Summ. J., Dkt. 163, at 19). NPPA advises its members on legal issues that face them in their work as journalists. (*Id.* at 18). Since the passage of the Chapter 423 provisions, NPPA has advised its members about the provisions, including researching the law and meeting with lawmakers and communicating with members about compliance. (*Id.*). Plaintiffs contend that NPPA has diverted resources from NPPA's core activities as a result of the Chapter 423 provisions. (*Id.*). TPA is one of the oldest and largest newspaper trade organizations in the country with more than 400 member newspapers across the state of Texas. (Baggett Decl., Dkt. 63,

22-50337.1222

at 122). Plaintiffs allege that Chapter 423 has led some its members "to avoid the use of drone photography" in their publications. (*Id.*).

In addition to the impacts on NPPA and TPA as organizations, individual members have also felt the effects of Chapter 423. NPPA member, employee of TPA member *San Antonio Express-News*, and video journalist Guillermo Calzada ("Calzada") has an FAA Part 107 Remote Pilot Certificate, which qualifies him to operate UAVs in the national airspace, and he owns a registered drone. (Calzada Decl., Dkt. 63, at 131; Calzada Certificate of Authorization, Dkt. 63, at 145). On July 24, 2018, Calzada used his UAV to report on an arson fire at an apartment complex in San Marcos. (Calzada Decl., Dkt. 63, at 131–32). Agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives stopped Calzada and called San Marcos police. (*Id.* at 132). A San Marcos police officer subsequently informed Calzada of the criminal penalties under Chapter 423 if he continued to use his UAV to report on the fire or published any of the captured images. (*Id.*). Plaintiffs allege that in that instance and going forward, Chapter 423 chilled Calzada's speech by causing him to fear prosecution under Chapter 423 for using UAVs for newsgathering. (*Id.* at 136).

NPPA member and news photographer Brandon Wade ("Wade"), whose clients include TPA members, is also qualified to operate UAVs in the national airspace and owns a UAV. (Wade Decl., Dkt. 63, at 165). Plaintiffs assert that Chapter 423's provisions have affected Wade's use of UAVs on several occasions. (*Id.* at 167–70). On August 14, 2017, Wade limited his UAV use when he photographed a water treatment plant because he feared that some photographs would violate the Chapter 423 provisions. (*Id.* at 171). Additionally, a local newspaper declined to publish photographs he took of a community garden after it learned Wade had used a UAV to capture the photographs. (*Id.* at 168). Another local newspaper declined Wade's request to use a UAV for an assignment, costing Wade thousands of dollars in lost income. (*Id.* at 167). When Wade was hired to photograph a facility that housed immigrant children, Wade limited where he flew his UAV as a result of the

5

Chapter 423 provisions. (*Id.* at 173). On another occasion, Wade was prohibited from using his drone to record the Texas Rangers ballpark for a newspaper even when the Rangers used same type of photography for their own commercial purposes. (*Id.* at 170–72). Plaintiffs assert that the uncertainty created by the Chapter 423 provisions has chilled Wade's speech. (*Id.* at 167).

Plaintiffs allege facts to demonstrate that UAV images are an increasingly important part of journalism central to communicating the message of the news. Drone photography can "add additional information and important perspective for the reader—particularly where, for example, a story covers a large area that would be difficult to visualize or understand without an aerial perspective." (*Id.* at 165; *see also* Calzada Decl., Dkt. 63, at 133). The unique attributes of drone photography facilitate the gathering and dissemination of the news, according to Plaintiffs. (Pls.' Mot. Summ. J., Dkt. 63, at 12). UAVs' low altitude "can allow for better images to be made and can provide more information to the viewer"; (Wade Decl., Dkt. 63, at 166); their maneuverability "enables better and clearer photography"; their on-board technology "stabilizes the camera to make video footage smoother," (*id.*); they are more economically feasible than helicopters for freelance journalists and news organizations, (Pappalardo Decl., Dkt. 63, at 153; Calzada Decl., Dkt. 63, at 133; Wade Decl., Dkt. 63, at 165); and they allow "journalists to reach the scene more quickly, follow events from an elevated perspective, and inform citizens in more engaging ways." (Amicus Br., Dkt. 72-2, at 4).

UAVs are also a relatively safe option for aerial photography when compared to helicopters, (Wade Decl., Dkt. 63, at 169; Ramsess Decl., Dkt. 63, at 158; Calzada Decl., Dkt. 63, at 131). Defendants note that "drone operation requires extensive and diligent maintenance, rigorous training, and careful regulation." (Defs.' Resp., Dkt. 68, at 3). Plaintiffs include drone pilots who are licensed by the FAA to fly drones, file their flights, and are still restrained in their use of this technology (*See, e.g.,* Calzada Decl., Dkt. 63, at 131; Calzada Certificate of Authorization, Dkt. 63, at

22-50337.1224

145; Pappalardo Decl., Dkt. 63, at 150; Wade Decl., Dkt. 63, at 165).[2] As Amici note, although there are risks associated with UAVs, any incidents "represent a miniscule fraction of drone operations," and the risks associated with helicopters "in terms of loss of life, injury and property damage are vastly worse than if the same were to occur with a" UAV. (Amicus Br., Dkt. 72-2, at 7).

Plaintiffs filed this action on Sept. 26, 2019. (Compl., Dkt. 1). Defendants are Steven McCraw, Director of the Texas Department of Public Safety ("DPS"); Dwight Mathis, Chief of the Texas Highway Patrol ("THP"), and Wes Mau, the District Attorney of Hays County. Defendants filed motions to dismiss Plaintiffs' claims, which the Court denied on November 30, 2020 as to all but Plaintiffs' Supremacy Clause claims. (Order, Dkt. 52, at 29). For largely the same reasons expressed there, the Court will grant Plaintiffs' motion for summary judgment and deny Defendants' motion for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility

---

[2] Defendants allege that drones can be dangerous and cite evidence that UAVs "risk of crashes which can endanger persons on the ground or risk property damage." (Fritch Decl., Dkt. 65-2, at 7). But this evidence has no bearing on the safety of UAVs in comparison to other methods of aerial photography—namely helicopters. Defendants produce no evidence to suggest that helicopters are as safe as, or safer than, drones when used for newsgathering.

determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

If the moving party does not bear the ultimate burden of proof, after it has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). When the movant bears the burden of proof, she must establish all the essential elements of her claim that warrant judgment in her favor. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002). In such cases, the burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).

Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin All. v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000). Cross-motions for summary judgment "must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004).

8

# III. DISCUSSION

## A. Standing

Under Article III of the Constitution, federal court jurisdiction is limited to cases and controversies. U.S. Const. art. III, 2, cl. 1; *Raines v. Byrd*, 521 U.S. 811, 818 (1997). A key element of the case-or-controversy requirement is that a plaintiff must establish standing to sue. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To establish Article III standing, a plaintiff must demonstrate that she has (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *See Lujan*, 504 U.S. at 560–61. Only one party is required to demonstrate standing to satisfy Article III's case-or-controversy requirement. *Rumsfeld v. Forum for Academic & Inst. Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006). Only one plaintiff must have standing "to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006)).

Plaintiffs claim that Pappalardo meets the requirements for standing as an individual, and that NPPA and TPA have both organizational and associational standing. Defendants argue that each of the Plaintiffs lacks standing and cannot establish any of the required elements. (Defs.' Mot. Summ. J., Dkt. 65, at 12–14). Defendants claim no Plaintiff can establish injury in fact because none has been threatened with or subjected to enforcement, and none has interacted with Defendants regarding Chapter 423. (Defs.' Mot. Summ. J., Dkt. 65, at 14). However, Plaintiffs need not show that they will be punished, only that the challenged law has caused Plaintiffs to reasonably self-censor their speech for fear of being punished. *Justice v. Hosemann*, 771 F.3d 285, 291 (5th Cir. 2014) ("[C]hilling a plaintiffs' speech is a constitutional harm adequate to satisfy the injury-in-fact requirement."). "[I]t is not necessary that [a plaintiff] first expose himself to actual arrest or prosecution . . . a credible threat of enforcement is sufficient." *Id.* (quotations omitted). Indeed, the Supreme Court has made clear that plaintiffs who engage in activity "arguably affected with a

9

constitutional interest, but proscribed by a statute," should not "be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979); *see Zimmerman v. City of Austin*, 881 F.3d 378, 388 (5th Cir. 2018); *see Animal Legal Def. Fund v. Vaught*, No. 20-1538, 2021 WL 3482998, at *3 (8th Cir. Aug. 9, 2021) ("A formal threat . . . is not required to establish an injury in fact. The question is whether the plaintiffs have an objectively reasonable fear of legal action that chills their speech.").

Plaintiffs state that Pappalardo has stopped using his UAV for newsgathering "for fear of facing criminal or civil liability." (Pappalardo Decl., Dkt. 63, at 151, 153). The law has chilled him from reporting on "several newsworthy stories." (Pls.' Resp., Dkt. 67, at 21; Pappalardo Decl., Dkt. 63, at 153). NPPA member Wade has "self-censored" his UAV photography in response to the law. (Wade Decl., Dkt. 63, at 173). And NPPA member Calzada has limited his use drone recording after he was approached by San Marcos police and informed he was violating state law. (Calzada Decl., Dkt. 63, at 131–33). TPA's members too have adopted policies against use of UAV images out of fear of violating Chapter 423. (Wade Decl., Dkt. 63, at 167–68). The Court is satisfied that any one of these injuries is sufficient to satisfy the injury-in-fact requirement; the existence of multiple independent injuries is more than sufficient to entitle Plaintiffs to summary judgment on this issue.

As to traceability, they claim that Defendants are law enforcement officers who lack prosecution authority. (*Id.*). Though they concede Mau has prosecution authority, they claim he has never threatened or used his authority against plaintiffs. (*Id.*). Defendants appear to overcomplicate the issue; all three defendants have the power and the duty under state law to enforce Chapter 423, leading Plaintiffs to fear enforcement and refrain from constitutionally protected activities. (Pls.' Resp., Dkt. 67, at 22).

Regarding redressability, Plaintiffs need not prove that the relief the seek will fully redress the harms they suffer. *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) ("[A] plaintiff satisfies the

10

redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his every injury."). Plaintiffs claim that their requested relief "will, at minimum, permit Plaintiffs to gather the news using drones in Defendants' jurisdictions without fear of arrest or prosecution by Defendants, relieving many of their First Amendment injuries in those locations." (Pls.' Resp., Dkt. 67, at 23). Moreover, a declaratory judgment will have the practical effect of allowing them to exercise their First Amendment rights by removing the fear of prosecution even in jurisdictions not represented here, where they can use this judgment to support their case. (*Id.*, citing *Utah v. Evans*, 536 U.S. 452, 464 (2002) (finding redressability where "the practical consequence of [the declaratory judgment] would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered"). Thus, the Court is satisfied that Plaintiffs have established redressability here.

The Court further finds that NPPA and TPA have met the requirements to establish associational standing. [3] "[A]n association has standing to bring suit on behalf of its members when: [1] its members would otherwise have standing to sue in their own right; [2] the interests it seeks to protect are germane to the organization's purpose; and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996) (quoting *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)). As discussed above, NPPA members Wade and Calzada have demonstrated that their speech was chilled by Chapter 423 sufficient to establish standing in their own right. (Wade Decl., Dkt. 63, at 167; 173; Calzada Decl., Dkt. 63, at 132, 136).

---

[3] Plaintiffs also assert standing on behalf of NPPA and TPA under a theory of organizational standing. (Pls.' Mot. Summ. J., Dkt. 63, 46). Because the Court finds that NPPA and TPA both have associational standing, and Pappalardo has standing as an individual, the Court is satisfied that Plaintiffs have established standing and need not address the arguments related to organizational standing.

11

And TPA member newspaper *The Dallas Morning News* has, as a result of Chapter 423, adopted a policy against using UAV photographs, chilling this form of expression. (Wade Decl., Dkt. 63, at 167–68).

Next, both organizations seek to vindicate interests germane to their purpose—the rights of journalists and newspapers to engage in a form of newsgathering and publication under the First Amendment. (Pls.' Mot. Summ. J., Dkt. 63, at 45–46). "NPPA's mission is supporting and advocating for visual journalists and promoting excellence in the profession." (*Id.* at 46, citing Ramsess Decl., Dkt. 63, at 159). TPA "promotes the welfare of Texas newspapers, encourages higher standards of journalism, and plays an important role in protecting the public's right to know as an advocate of First Amendment liberties." (Baggett Decl., Dkt. 63, at 122). Finally, this lawsuit does not require the participation of individual members of either organization, as a facial challenge to the constitutionality of the law. *See United Food & Commer. Workers Union Local 751*, 517 U.S. at 546 ("'[I]ndividual participation' is not normally necessary when an association seeks prospective or injunctive relief for its members.") (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342-43 (1977)). As such, both NPPA and TPA have associational standing. The Court thus finds that Plaintiffs are entitled to summary judgment on the issue of standing for all three plaintiffs.

## B. Immunity

Defendants claim that they are protected by sovereign immunity from the claims here and seek summary judgment on this basis. The Eleventh Amendment typically deprives federal courts of jurisdiction over "suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it." *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). However, under the *Ex parte Young* exception to sovereign immunity, lawsuits may proceed in federal court when a plaintiff requests prospective relief against state officials in their official capacities for ongoing federal violations. 209

U.S. 123, 159–60 (1908). "For the [*Ex parte Young*] exception to apply, the state official, 'by virtue of his office,' must have 'some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'" *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (quoting *Young*, 209 U.S. at 157); *see also In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020) ("*Ex parte Young* allows suits for injunctive or declaratory relief against state officials, provided they have sufficient 'connection' to enforcing an allegedly unconstitutional law.").

"If the official sued is not 'statutorily tasked with enforcing the challenged law,' then the requisite connection is absent and '[the] *Young* analysis ends.'" *Abbott*, 956 F.3d at 709 (quoting *City of Austin*, 943 F.3d at 998). Where, as here, "no state official or agency is named in the statute in question, [the court] consider[s] whether the state official actually has the authority to enforce the challenged law." *City of Austin*, 943 F.3d at 998. Neither a specific grant of enforcement authority nor a history of enforcement is required to establish a sufficient connection. *City of Austin*, 943 F.3d 993 at 1001; *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017). There need be only a "scintilla of enforcement by the relevant state official" for *Ex parte Young* to apply. *City of Austin*, 943 F.3d at 1002 (quotations omitted). Actual threat of or imminent enforcement is "not required." *Air Evac*, 851 F.3d at 519.

Defendants assert that they are immune from suit here because neither DPS nor THP has made an arrest under Chapter 423. (*See* McCraw Answers, Dkt. 65-12, at 8; Mathis Answers, Dkt. 65-12, at 29). And where DPS officers have interacted with drone pilots, they have never issued warnings for violations of Chapter 423. (*See* McCraw Answers, Dkt. 65-12, at 9–10). Further, in his seven years in office, Mau has only charged one person in connection with a drone. (*See* Mau Answers, Dkt. 65-12, at 49 –51). And Plaintiffs themselves have not been directly threatened with enforcement by Defendants themselves. (*See* NPPA Resp., Dkt. 65-12, at 75, 81–82; TPA Resp.,

Dkt. 65-12, at 92–93, 96–97; Pappalardo Resp., Dkt. 65-12 at 113 –14). Defendants further state that

McCraw and Mathis do not have prosecution authority, though they concede they have authority to

make arrests under Chapter 423. (Defs.' Mot. Summ. J., Dkt. 65, at 11). Defendants claim that none

of them have made "a specific threat or indicate[d] that enforcement was forthcoming," nor stated

that Plaintiffs "had violated a specific law" or "intimated that formal enforcement was on the

horizon." *Texas Democratic Party v. Abbott,* 978 F.3d 168, 181 (5th Cir. 2020). They argue that, lacking

a connection to the enforcement of the law, sovereign immunity cannot be waived under *Ex parte*

*Young* here.

      Plaintiffs respond that Defendants undisputedly have the duty to enforce Texas law, which

includes the duty to enforce Chapter 423. (Pls.' Resp., Dkt. 67, at 19). Peace officers have the duty to

arrest individuals who violate criminal laws. TEX. CODE CRIM. PROC. arts. 2.13, 14.01. Mathis is the

Chief of THP, and therefore a peace officer with the power and duty to enforce Chapter 423. *Id.* at

art. 2.12(4); TEX. GOV. CODE § 411.006(a)(5). McCraw is the Director of DPS, where he supervises

thousands of peace officers, including "rangers, officers, and members of the reserve officer corps

commissioned by the Public Safety Commission and the Director of the Department of Public

Safety." TEX. CODE CRIM. PROC. art. 2.12(4). He is "directly responsible . . . for the conduct of the

department's affairs." TEX. GOV. CODE § 411.006(a)(1). McCraw is therefore also responsible for

enforcing the state's laws. Finally, Mau has "prosecution authority" extending to Chapter 423.

(Defs.' Mot. Summ. J., Dkt. 65, at 12).

      As to their willingness to enforce the law, "[a] 'scintilla of enforcement by the relevant state

official with respect to the challenged law' will do." *Texas Democratic Party*, 978 F.3d at 179 (quoting

*City of Austin*, 943 F.3d at 1002). Here, Mau's office has made an arrest for drone-related conduct

under the statute. (Defs.' Mot. Summ. J., Dkt. 65, at 11; *See* Mau Answers, Dkt. 65-12, at 49 –51). A

single arrest constitutes a "scintilla of enforcement" here. Moreover, Plaintiffs have no way of

14

knowing whether Defendants will enforce the law moving forward. Defendants have provided no

binding assurances, and the Supreme Court has noted that "[w]e would not uphold an

unconstitutional statute merely because the Government promised to use it responsibly." *United*

*States v. Stevens*, 559 U.S. 460, 480 (2010) ("[T]he First Amendment protects against the Government;

it does not leave us at the mercy of noblesse oblige."); *see KVUE, Inc. v. Moore*, 709 F.2d 922, 930

(5th Cir. 1983) ("That the statute has not been enforced and that there is no certainty that it will be

does not establish the lack of a case or controversy. The state has not disavowed enforcement.").

Given the possibility of enforcement, and the duty of Defendants to do so if a relevant situation

arises, the Court finds that Plaintiffs have established sufficient connection to enforcement for

Defendants to fall within the *Ex parte Young* exception to sovereign immunity. Therefore, the Court

finds Defendants' motion on this point must fail.

Having found that Plaintiffs have standing, and that Defendants are not immune from suit,

the Court moves on to address the parties' motions on the merits.

### C. First Amendment

The parties dispute whether Chapter 423's restrictions on drone usage by journalists violates

the First Amendment. This issue requires a multi-part inquiry by the Court to determine (1) whether

the First Amendment protects the activity at issue here; (2) if so, what level of scrutiny should apply;

and (3) whether the law can survive such scrutiny. The Court will address each question in turn.

#### 1. Whether UAV Photojournalism is Covered by the First Amendment

The Court must first address whether Chapter 423 implicates activity covered by the First

Amendment. Plaintiffs claim Chapter 423 violates the First Amendment by restraining their ability

to gather and disseminate news. (Pls.'s Mot. Summ. J., Dkt. 63, at 23). Defendants counter that the

right Plaintiffs assert "is found nowhere in the First Amendment." (Defs.' Mot. Summ. J., Dkt. 65,

at 15). Defendants urge an improperly narrow understanding of the Constitution that is without

22-50337.1233

support in the law. For "[t]he right of freedom of speech and press includes not only the right to utter or to print, but the right to distribute, the right to receive, the right to read." *Griswold v. Connecticut*, 381 U.S. 479, 482 (1965); *see Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 792 n.1 (2011) ("Whether government regulation applies to creating, distributing, or consuming speech makes no difference.").

As Chapter 423 demonstrates, "[l]aws enacted to control or suppress speech may operate at different points in the speech process." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 336 (2010). The protections offered by the First Amendment must extend to each phase of the "speech process" if they are to have any effect at all, as "regulation limiting the creation of [speech] curtails expression as effectively as a regulation limiting its display." *Buehrle v. City of Key W.*, 813 F.3d 973, 977 (11th Cir. 2015). In the analogous context of filmmaking, the Fifth Circuit has noted that "the First Amendment protects the act of making film, as 'there is no fixed First Amendment line between the act of creating speech and the speech itself.'" *Turner v. Lieutenant Driver*, 848 F.3d 678, 689 (5th Cir. 2017) (quoting *Am. C.L. Union of Illinois v. Alvarez*, 679 F.3d 583, 596 (7th Cir. 2012)). Furthermore, courts have never recognized a "distinction between the process of creating a form of pure speech (such as writing or painting) and the product of these processes (the essay or the artwork) in terms of the First Amendment protection afforded. . . . [W]e have not attempted to disconnect the end product from the act of creation." *Id.* (quoting *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1061–62 (9th Cir. 2010)). This reasoning holds just as true for photographs and videos captured by drone: the process of creating the images finds just as much protection in the First Amendment as the images themselves do. Indeed, "[t]he act of making an audio or audiovisual recording is necessarily included within the First Amendment's guarantee of speech and press rights

as a corollary of the right to disseminate the resulting recording." *Driver*, 848 F.3d at 689 n.41 (quoting *Am. C.L. Union of Illinois*, 679 F.3d at 595).

Defendants claim that drone photography cannot be entitled to First Amendment protections because it was not contemplated by the Framers when they drafted the protections for expression and the press. (Defs.' Mot. Summ. J., Dkt. 65, at 16). But neither did the Framers anticipate photography in any form, much less video or internet communications, all of which are today covered by the First Amendment. Applying the Constitution's protections to new technological contexts is far from a novel exercise. Indeed, "[c]ourts often must apply the legal rules arising from fixed constitutional rights to new technologies in an evolving world." *United States v. Miller*, 982 F.3d 412, 417 (6th Cir. 2020). The Supreme Court has "emphatically rejected [the] 'startling and dangerous' proposition" that the government "could create new categories of unprotected speech by applying a 'simple balancing test' that weighs the value of a particular category of speech against its social costs and then punishes that category of speech if it fails the test." *Brown*, 564 U.S. at 792 (quoting *United States v. Stevens*, 559 U.S. 460, 470 (2010)). Absent "persuasive evidence that a novel restriction on content is part of a long . . . tradition of proscription, a legislature may not revise the 'judgment of the American people,' embodied in the First Amendment, "that the benefits of its restrictions on the Government outweigh the costs." *Id.* (quoting *Stevens*, 559 U.S. at 470). Fundamentally, the "First Amendment draws no distinction between the various methods of communicating ideas." *Superior Films, Inc. v. Dep't of Educ.*, 346 U.S. 587, 589 (1954) (Douglas, J., concurring).

Here, Plaintiffs have established that Chapter 423 restricts their use of drones to record the news, necessarily constraining their ability to disseminate the news. It is uncontested that budgetary and other constraints may make drones the only option for recording certain events. (Pls.' Mot. Summ. J., Dkt. 63, at 2–6). Defendants assert that other options—namely expensive helicopters—

can fill the same role in facilitating news production. (Defs.' Mot, Summ. J., Dkt. 65, at 4). Yet they cannot dispute the extreme price and safety differences between these technologies. Furthermore, Pappalardo and the organizational plaintiffs' members have stated that drones are central to their journalistic pursuits, claims which Defendants do not refute. (*See* Pappalardo Decl., Dkt. 63, at 152; Wade Decl., Dkt. 63, at 165). The Court thus finds that Plaintiffs have established that, as a matter of law, use of drones to document the news by journalists is protected expression, and, by regulating this activity, Chapter 423 implicates the First Amendment.

### 2. What Level of Scrutiny is Appropriate under the First Amendment

Next, the Court addresses the proper level of scrutiny to apply to the restrictions of expressive activity in Chapter 423. Plaintiffs claim that, because it constitutes content and speaker-based restrictions, the law should be subject to strict scrutiny. (Pls.' Mot. Summ. J., Dkt. 63, at 24). The Court agrees.[4]

Laws that regulate expression based on its subject are ordinarily impermissible, as "the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Stevens*, 559 U.S. at 468 (quoting *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573 (2002)). As such, content-based restrictions are subject to heightened scrutiny. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011). A law is content-based, triggering strict scrutiny, if it "'on its face' draws distinctions based on the message a speaker conveys." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting *Sorrell*, 564 U.S. at 565); *see Reagan Nat'l Advert. of Austin, Inc. v. City of Austin*, 972 F.3d 696, 706 (5th Cir. 2020), *cert. granted sub nom. City of Austin, Texas v. Reagan Nat'l Advert. of Texas, Incorporate*, 141 S. Ct. 2849 (2021) (A law "does not

---

[4] Plaintiffs assert as an independent basis for applying strict scrutiny that newsgathering in itself is protected by the First Amendment, and Chapter 423 substantially burdens this activity. (Pls.'s Mot. Summ. J., Dkt. 63, at 19). The Court is inclined to agree with Plaintiffs and expressed as much in its Order on Defendants' Motion to Dismiss. (Order, Dkt. 52, at 18). Still, having found strict scrutiny appropriate as a content and speaker-based restriction on expression, it need not reach this argument and so declines to do so here.

need to discriminate against a specific viewpoint to be 'content based.'"). "Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny." *Reed*, 576 U.S. at 163–64.

  The Surveillance and No-Fly Provisions are both content-based restrictions that regulate based on the subject of the expression. The Surveillance Provisions require the enforcing official to inquire into the contents of the image to determine whether it is prohibited. Specifically, the provisions apply to images of individuals and private real property only. TEX. GOV'T CODE § 423.003(a). Drone photography is permitted when the subject is public property, but when the subject is an individual or private property, the possession, disclosure, display, or distribution of the image is prohibited. *Id.* at §§ 423.002(a)(15), 423.004(a). In effect, the statute "identifies various categories" of images based on their content, "then subjects each category to different restrictions." *Reed*, 576 U.S. at 159. An official must first ascertain the subject matter of the drone image to determine whether it is permissible under the statute. Therefore, it is the content of the image that determines its permissibility—the definition of a content-based restriction.

  The No-Fly Provisions are also subject to strict scrutiny by conditioning the legality of images based on their purpose. *Reagan*, 972 F.3d at 706 ("[A] distinction can be facially content based if it defines regulated speech by its function or purpose."). "Whether laws define regulated speech by particular subject matter or by its function or purpose, they are subject to strict scrutiny." *Reed*, 576 U.S. at, 156. Under the No-Fly Provisions, expression that would otherwise be prohibited is permissible if "used for a commercial purpose." TEX. GOV'T CODE § 423.0046(c)(5); *see Price v. Barr*, 514 F. Supp. 3d 171, 188 (D.D.C. 2021) (invalidating a law where applicability "necessarily turns on an assessment of whether the content of a film was meant to appeal to a market audience

and generate income."); *Sorrell*, 564 U.S. at 564. Indeed, Calzada and Wade both note that, as journalists, they cannot take drone images of Nelson Wolff Stadium and Globe Life Park, respectively. (Calzada Dec., Dkt. 63, at 135; Wade Dec., Dkt. 63, at 171). But Wade was hired by the Rangers to take the very same images of Globe Life Park "for their own public relations purposes"—that he was "not permitted to share . . . with members of the news media." (*Id.*). Here too, then, the purpose determines the legality of the speech. For both the Surveillance and No-Fly Provisions, the subject or purpose of the drone-captured image is the key to its applicability. Thus, both constitute content-based restrictions and trigger strict scrutiny under the First Amendment.

The Surveillance Provisions are separately subject to strict scrutiny as they discriminate based on the identity of the speaker. A regulation may also constitute a content-based restriction if it discriminates between speakers in a way that "disfavors" certain speakers in exercising their First Amendment rights. *Sorrell*, 564 U.S. at 564. The Supreme Court has admonished that "[s]peech restrictions based on the identity of the speaker are all too often simply a means to control content." *Citizens United*, 558 U.S. at 340. Section 423.003 provides an extensive list of individuals whose use of drones is not proscribed. TEX. GOV'T CODE § 423.002(a)(9). Professors, students, employees of insurance companies, and real estate brokers all appear on this list; journalists do not. (*Id.*). As Plaintiffs note, the same drone image taken legally by a professor would constitute a misdemeanor if captured by a journalist. (Pls.' Mot. Summ. J., Dkt. 63, at 23). The Surveillance Provisions thus discriminate based on the identity of the speaker, and "the Government may commit a constitutional wrong when by law it identifies certain preferred speakers." *Citizens United*, 558 U.S. at 340–41. Therefore, the Court finds that strict scrutiny is the proper standard under which to evaluate these provisions.

22-50337.1238

<u>3. Whether Chapter 423 Survives Strict Scrutiny</u>

Having found that strict scrutiny is appropriate here, the Court moves on to analyze the challenged portions of Chapter 423 under that standard. Statutes that regulate based on content are "presumptively invalid." *United States v. Stevens*, 559 U.S. 460, 468 (2010) (quoting *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 817 (2000)). Such laws "may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163; *see also R. A. V. v. St. Paul*, 505 U.S. 377, 395 (1992); S*imon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115 (1991); *Reagan Nat'l Advert. of Austin v. City of Austin*, 972 F.3d 696, 709 (5th Cir. 2020). In other words, the restrictions must be "'actually necessary' to achieve" a compelling interest, *United States v. Alvarez*, 567 U.S. 709, 725 (2012) (quoting *Brown*, 564 U.S. at 799), and "narrowly tailored to achieve that interest," *Reed*, 576 U.S. at 171 (2015) (quoting *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011)). This is a "demanding standard"; content-based restrictions on speech are rarely permitted. *Brown*, 564 U.S. at 799 (quoting *Playboy*, 529 U.S. at 818).

a. Actually Necessary

A law restricting speech based on content is not "actually necessary" unless the government establishes that no alternative means would "suffice to achieve its interest." *Alvarez*, 567 U.S. at 726. Accordingly, a state may not regulate speech where it "has available to it a variety of approaches that appear capable of serving its interests, without excluding individuals from" activities protected by the First Amendment. *McCullen v. Coakley*, 573 U.S. 464, 494 (2014). Applying this principle, the Fourth Circuit has invalidated a law that "burdens more speech than necessary" where there was an

"absence of evidence of a county-wide problem" to justify the law's "county-wide sweep." *Reynolds v. Middleton*, 779 F.3d 222, 231 (4th Cir. 2015).

Here, Defendants cannot carry their burden to establish that Chapter 423 is "actually necessary" to protect any identified interests. In enacting the law, state legislators claimed the law would protect private property, individual privacy, and the safety of critical infrastructure facilities. House Bill Analysis for HB 912 (May 7, 2013) at 5. (*See* Pls.' Mot. Summ. J., Dkt. 63, at 30). However, Defendants have failed to establish that alternative means are insufficient to sufficiently protect these interests. Plaintiffs note that "Defendants have a variety of tools to protect the privacy and private property of Texans from overly intrusive or dangerous drone use without Chapter 423." (*Id.* at 31). The Texas criminal trespass statute, Texas Penal Code § 30.05(a); Texas Transportation or Administrative Code; recording and voyeurism statutes, TEX. PENAL CODE ANN §§ 21.15–.17 (West 2020); and tort claims including intrusion upon seclusion, *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993), all have been or could be used to protect the privacy of individuals from UAV recordings. (*See* Mathis Answers, Dkt. 63, at 58 –59; McCraw Answers, Dkt. 63, at 72–73). As to safety of critical facilities, it is already a felony under Texas law to knowingly damage, impair, or interrupt a critical infrastructure facilities. TEX. GOV'T CODE §§ 424.051, 424.052. Having failed to identify any interest that is unprotected absent Chapter 423, Defendants cannot establish that this provision is "actually necessary." Indeed, "[m]ere speculation of harm does not constitute a compelling state interest." *Consol. Edison Co. v. Pub. Serv. Comm'n*, 447 U.S. 530, 543 (1980). As such, the Court finds that Chapter 423 is not actually necessary to achieve any identified interest of the government.

### b. Narrowly Tailored

Defendants have also failed to establish that Chapter 423 is narrowly tailored to address the purported interests it asserts. "[I]t is the rare case in which a State demonstrates that a speech

22

restriction is narrowly tailored to serve a compelling interest." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444 (2015). The government may only ever infringe rights protected by the First Amendment by "means that are neither seriously underinclusive nor seriously overinclusive." *Brown*, 564 U.S. at 805; *see Reynolds*, 779 F.3d at 231 (invalidating ordinance that applied to "all County roads, regardless of location or traffic volume . . . thus "prohibit[ing] *all* [expressive conduct] even where those activities would not be dangerous.). Plaintiffs assert, and the Court agrees, that Chapter 423 is both overinclusive (and overbroad) and underinclusive, and so cannot be narrowly tailored as required by the First Amendment.

The Surveillance and No-Fly Provisions are overinclusive and thus overbroad because they "unnecessarily circumscribe[s] protected expression," *Republican Party of Minn. v. White*, 536 U.S. 765, 775 (2002)). Plaintiffs have established that Chapter 423 effectively outlaws the use of UAVs for newsgathering on private property—constituting 95 percent of the state. *See* Inst. Renewable. Nat. Res., Texas Land Trends, Tex. A&M, https://txlandtrends.org/files/lt-2014-factsheet.pdf. TEX. GOV'T CODE § 423.003. As Plaintiffs note, the Surveillance Provisions "prevent[] journalists from using drones to record many scenes that could be recorded from a helicopter, or that anyone standing on public property could easily see and record." (Pls.' Mot. Summ. J., Dkt. 63, at 33). Wade explains that "even if I am physically over public property, I am violating the law by documenting private real property or a person on that property." (Wade Decl., Dkt. 63, at 170). Similarly, the No-Fly Provisions proscribe use of drones even when they "indisputably do[] not pose the risks that the State claims." (Pls.' Mot. Summ. J., Dkt. 63, at 33). In particular, restrictions on recording empty stadiums seem to belie explanation, and Defendants have done nothing to alter this impression. (*Id.* at 33–34). Accordingly, Chapter 423 is unconstitutionally overbroad, as "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United*

22-50337.1241

*States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008)).

The Surveillance and No-Fly Provisions are also underinclusive based on their carve-outs for uses of UAVs that pose the same risks as would drone journalism. If the interests in privacy and safety were indeed sufficient to uphold the law, the exceptions included in Chapter 423 would "leav[e] appreciable damage to [the government's] interest unprohibited." *Reed*, 576 U.S. at 172. The Surveillance Provisions exclude 21 uses of drones, none of which obviate the purported privacy concerns of newsgathering. As such, the exceptions "raise[] serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint," *Brown*, 564 U.S. at 802. As to the No-Fly Provisions, the exemption of drone photography for "commercial purposes" appears divorced from any asserted interest in safety or privacy. TEX. GOV'T CODE § 423.0045(c). Defendants have failed to address the Court's previously raised "questions as to how these government interests could be threatened by newsgathering but not by commercial interests." (Order, Dkt. 52, at 24). As Plaintiffs note, "[t]he government's interests were threatened no more when Wade was hired by the Texas Rangers to take drone images of their new baseball stadium for commercial purposes than when he tried to do the same thing for journalism purposes." (Pls.' Mot. Summ. J., Dkt. 63, at 35; Wade Decl., Dkt. 63, at 170–72). Finding the provisions at issue both overbroad and underinclusive, the Court finds that Chapter 423 is not narrowly tailored to any governmental purpose. Because the Surveillance and No-Fly Provisions are not actually necessary nor narrowly tailored, they cannot withstand strict scrutiny. As such, the Court finds that Chapter 423 violates the First Amendment.

### D. Void for Vagueness

Plaintiffs claim that the Surveillance and No-Fly Provisions are unconstitutional for the independent reason that they are void for vagueness. Having found Plaintiffs are entitled to

22-50337.1242

summary judgment on the basis of their First Amendment claim alone, the Court need not address this argument. However, to avoid any confusion, and given the extensive briefing by the parties on this issue, the Court will briefly address why Chapter 423's vagueness as to the terms "surveillance" and "commercial purposes" separately renders it unconstitutional.

A more stringent vagueness test applies where a law "interferes with the right of free speech." *Hoffman Estates v. Flipside*, 455 U.S. 489, 499 (1982). Such laws may be constitutionally infirm where they "encourage arbitrary and discriminatory enforcement," *Kolender v. Lawson*, 461 U.S. 352, 357 (1983), or "have the capacity 'to chill constitutionally protected conduct, especially conduct protected by the First Amendment.'" *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 546 (5th Cir. 2008) (quoting *United States v. Gaudreau*, 860 F.2d 357, 360 (10th Cir.1988)). "A law is unconstitutionally vague if it (1) fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited, or (2) is so indefinite that it allows arbitrary and discriminatory enforcement." *Women's Med. Ctr. of Nw. Haus. v. Bell*, 248 F.3d 411, 421 (5th Cir. 2001). This test demands that statutes affecting speech explain precisely what conduct they are proscribing. *See Edwards v. South Carolina*, 372 U.S. 229, 236 (1963). "Due Process proscribes laws so vague that persons 'of common intelligence must necessarily guess at [their] meaning and differ as to [their] application.'" *Bell*, 248 F.3d 411 at 421 (alterations in original) (quoting *Smith v. Goguen*, 415 U.S. 566, 572 n.8 (1974)). In other words, the government may regulate conduct that affects speech "only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 433 (1963). A law must not be so vague that it fails to provide "fair notice of conduct that is forbidden or required." *FCC v. Fox TV Stations, Inc.*, 567 U.S. 239, 253 (2012).

### 1. Surveillance

Chapter 423 does not provide a definition of "surveillance," nor do Defendants put forth a single definition. (Defs.' Mot. Summ. J., Dkt. 65, at 21). Plaintiffs therefore turn to dictionary

25

definitions, noting the inconsistencies between them. (Pls.' Mot. Summ. J., Dkt. 63, at 39) ("Surveillance can involve 'close observation or listening of a person or place in the hope of gathering evidence.' Surveillance, BLACK'S LAW DICTIONARY (11th ed. 2019). Or it might be as broad as the 'act of observing or the condition of being observed.' Surveillance, AMERICAN HERITAGE DICTIONARY (2019), www.ahdictionary.com. Either might include journalism."). Defendants further provide that surveillance may mean "the careful watching of a person or place, especially by the police or army, because of a crime that has happened or is expected," CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/surveillance (last visited July 9, 2021); "a watch kept over a person, group, etc., especially over a suspect, prisoner, or the like[;] . . . continuous observation of a place, person, group, or ongoing activity in order to gather information," DICTIONARY.COM, https://www.dictionary.com/browse/surveillance (last visited July 9, 2021); or "the process of carefully watching a person or place that may be involved in a criminal activity." MACMILLAN DICTIONARY, https://www.macmillandictionary.com/us/dictionary/american /surveillance (last visited July 9, 2021). (Defs.' Mot. Summ. J., Dkt. 65, at 21). None of these definitions conclusively includes or excludes journalism, and none is found within the statute.

Defendants themselves double down on their refusal to define the term and its applicability to journalism, stating that "'journalism' . . . may or may not constitute 'surveillance,' . . . depend[ing] on factual determinations by a jury." (Mathis Answers, Dkt. 63, at 60; Mathis Answers, Dkt. 63, at 75). Defendants claim that "surveillance" is distinct from "observation," because it "involves prolonged time periods and/or some degree of surreptitiousness or invasion of one's expectation that they are not being watched. (Defs.' Mot. Summ. J., Dkt. 65, at 21). But this contention only highlights the vagueness in the word's meaning, for it in no way clarifies whether journalism is covered. Defendants further claim that the intent requirement in Chapter 423 is the operative word,

and that persons who do not "intend" to surveil, or do not intend to surveil individuals or private property more specifically, are not liable under the statute. (Defs.' Mot. Summ. J., Dkt. 65, at 22). But without knowing what constitutes surveillance it is impossible to know whether one's intention constitutes that prohibited activity. These arguments cannot save a fatally vague statutory term.

Plaintiffs provide uncontroverted evidence that the uncertainty surrounding the term "surveillance" dissuades journalists from engaging in UAV photography, chilling their speech. Pappalardo stated that he is "concerned that using a [drone] for journalistic purpose would put [him] at risk of criminal [or civil] penalties," and so he has "not flown the drone to report any stories in Texas, including many that would have carried great urgency or public importance." (Pappalardo Decl., Dkt. 63, at 152). Wade noted that the definition could be construed "broad[ly] enough to include [his] work as a journalist," leading him to believe his work is prohibited under the law. (Wade Decl., Dkt. 63, at 166–67). Calzada is "very wary when [flying his drone], and choose[s] not to fly if law enforcement is anywhere in the vicinity" for the same reason. (Calzada Decl., Dkt. 63, at 134). He stated that his expression was "chilled" by Chapter 423 "by causing [him] to be at risk of civil and criminal liability when [he] photograph[s] important scenes related to news stories using [his] UAS." (Calzada Decl., Dkt. 63, at 136). TPA member *The Dallas Morning News* instituted a policy against using any drone photography. (Wade Decl., Dkt. 63, at 167–68). This Court has previously stated that the "multiple possible broad dictionary definitions from Plaintiffs, and no clarity offered from Defendants" leads to the conclusion that the term "surveillance" is unconstitutionally vague. (Order, Dkt. 52, at 21–22). Because Defendants have produced no evidence to alter that impression, the Court finds that Chapter 423 is unconstitutionally vague in its use of the "surveillance" term.

### 2. Commercial Purposes

Plaintiffs also claim that the No-Fly Provisions' use of the term "commercial purposes" is unconstitutionally vague, leaving journalists unable to discern whether their use of UAV photography will expose them to criminal or civil enforcement. (Pls.' Mot. Summ. J., Dkt. 63, at 41). Chapter 423 exempts from the No-Fly Provisions "unmanned aircraft that [are] being used for a commercial purpose." TEX. GOV'T CODE §§ 423.0045(c)(1)(E); 423.0046(c)(5). The statute does not define the term "commercial," and dictionary definitions do not provide conclusive guidance as to whether photojournalism is included in the definition. As Plaintiffs note, "commercial" may be limited to the "buying or selling of goods." Commercial, BLACK'S LAW DICTIONARY (11th ed. 2019). It may also refer more broadly to any moneymaking pursuit. *See, e.g.,* CAMBRIDGE ACADEMIC CONTENT DICTIONARY; MACMILLAN DICTIONARY. And within the field of journalism, photojournalism is considered "editorial" rather than "commercial." (Ramsess Decl., Dkt. 63, at 157; Wade Decl., Dkt. 63, at 166). Depending on the definition selected, then, photojournalism may or may not be included—a prime example of a vague statute.

Defendants attempt to avoid the vagueness challenge on this term by noting that Chapter 423 incorporates Part 107 of the Federal Aviation Regulations, which cover UAV news photography. (Defs.' Mot. Summ. J., Dkt. 65, at 26). Not only does the text of the statute fail to state that it is adopting the definitions from the FAA regulation, but the term "commercial" is used or defined nowhere in that regulation. *See* 14 C.F.R. pt. 107. Therefore, this reference does nothing to reduce the uncertainty surrounding the term. Defendants cite to several webpages, again not referenced in Chapter 423, as examples of what may or may not be included in the meaning of "commercial." (Defs.' Mot. Summ. J., Dkt. 65, at 26). But this multi-step process of implication and guesswork again only underscores the lack of clarity in the statute itself. Defendants are left with the assertions by Mathis and McCraw that journalism "may or may not constitute activity undertaken for a 'commercial purpose' depending on the facts and circumstances of the alleged conduct, including

28

the intent of the alleged actor," (Mathis Answers, Dkt. 63, at 62; McCraw Answers, Dkt 63, at 76),

and the similar claim by Mau that he "has never contended one way or the other as to what

constitutes a 'commercial purpose' for the purpose of this statute," (Mau Answers, Dkt. 63, at 89).

The lack of clarity from enforcing officials lends credence to Plaintiffs' fears of arbitrary

enforcement. Thus, the Court finds that the No-Fly Provisions are unconstitutionally vague in their

use of the term "commercial purposes."

## IV. MOTION TO INTERVENE

East Texas Ranch, L.P. ("Movant") seeks to intervene both by right and permissively. (Mot.

Intervene, Dkt. 60, at 1). For the following reasons, the Court finds that Movant is not entitled to

intervene by right and declines to exercise its discretion to permit it to intervene.

### A. Intervention by Right

Intervention by right is governed by Federal Rule of Civil Procedure 24(a). To intervene by

right, the prospective intervenor either must be "given an unconditional right to intervene by a

federal statute," Fed. R. Civ. P. 24(a)(1), or must meet each of the four requirements of Rule

24(a)(2):

> (1) the application for intervention must be timely; (2) the applicant must have an interest
> relating to the property or transaction which is the subject of the action; (3) the applicant
> must be so situated that the disposition of the action may, as a practical matter, impair or
> impede his ability to protect that interest; (4) the applicant's interest must be inadequately
> represented by the existing parties to the suit.

*Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). "Although the movant bears the burden of

establishing its right to intervene, Rule 24 is to be liberally construed." *Id.* (citations omitted).

"Federal courts should allow intervention where no one would be hurt and the greater justice could

be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir.1994) (internal quotation marks

omitted). However, the Fifth Circuit has also cautioned courts to be "circumspect about allowing

intervention of right by public-spirited citizens in suits by or against a public entity for simple

29

reasons of expediency and judicial efficiency." *City of Hous. v. Am. Traffic Sols., Inc.*, 668 F.3d 291, 294 (5th Cir. 2012).

Plaintiffs argue that Movant fails to demonstrate how its ability to protect its interests would be impaired by resolution of this matter, as required by Rule 24(a)(3). (Resp. Mot. Intervene, Dkt. 64, at 2). Because the Court finds that Movant does not meet this prong of Rule 24(a)(3), the Court need not analyze the remaining factors. Rule 24(a)(3) requires that an applicant to intervene "be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest." F. R. Civ. P. 23(a)(3). Impairment "does not demand that the movant be bound by a possible future judgment." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014). A prospective intervenor "must demonstrate only that the disposition of the action 'may' impair or impede their ability to protect their interests." *Id.* at 344; *see also Grutter*, 188 F.3d at 399.

According to Movant, Chapter 423 "involves current and ongoing unconstitutional takings of his property without due process" by "presum[ing] that [drones] . . . will be flown into privately-owned airspace," thereby creating "*de facto* easements into [its] privately-owned airspace." (Mot. Intervene, Dkt. 60, at 3). In addition, it claims that Chapter 423 "renders trespass lawful" and violates the takings provision of the Texas Constitution. (*Id.* at 4). While Movant may have viable claims as to these issues, they are at best tangentially related to the case at bar. Both the instant action and Movant's claims involve constitutional challenges to Chapter 423, but the similarities end there. Intervention is not required simply by virtue of challenging the same law. The resolution of this action will in no way impact Movant's ability to protect its rights in a separate action. Thus, the Court finds that Movant is not entitled to intervention by right under Rule 24(a)(3).

**B. Permissive Intervention**

On a timely motion, a court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact. Fed. R. Civ. P. 24(b)(1)(B).

Permissive intervention "is wholly discretionary . . . even though there is a common question of law or fact." *NOPSI*, 732 F.2d at 470–71. The relevant factors to consider are whether the motion was timely, whether the would-be intervenor's claim or defense shares a common question of law or fact with the main action, and whether the intervention will cause undue delay or prejudice. Fed. R. Civ. P. 24(b); *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185,189 n.2 (5th Cir. 1989).

The Court finds that permissive intervention is inappropriate here. Movant asserts that "its claims and affected interests involve common questions of law or fact with this action." (Mot. Intervene, Dkt. 60, at 5–6). As discussed above, there are no questions of law or fact common to both the main action and Movant's claims. The instant action is a First Amendment challenge to Chapter 423; Movant seeks to bring Fifth and Fourteenth Amendment takings claims. (*See* Compl., Dkt. 1; Mot. Intervene, Dkt. 60). The similarities reach only so far as the law being challenged. The Court agrees with Plaintiffs that their "constitutional challenge is entirely different than that [Movant] wishes to interject in this case." (Resp. Mot. Intervene, Dkt. 64, at 3). Furthermore, Plaintiffs correctly note that Movant waited until after the close of discovery and extensive briefing in this case, and as such was untimely and would prejudice the interests of the parties. (*Id.* at 3–4). The Court therefore declines to exercise its discretion to permit Movant to intervene under Rule 24(b)(2). Movant's motion to intervene is denied.

## V. CONCLUSION

For these reasons, the Court **ORDERS** as follows.

**IT IS ORDERED** that Plaintiffs' motion for summary judgment, (Dkt. 63), is **GRANTED**.

**IT IS FURTHER ORDERED** that TEX. GOV'T CODE §§ 423.002, 423.003, 423.004,

22-50337.1249

423.0045, 423.0046, and 423.006 violate the First and Fourteenth Amendments and are therefore unconstitutional.

**IT IS FURTHER ORDERED** that Defendants, as well as their officers, agents, employees, attorneys, and all persons in active concert or participation with them, are enjoined from enforcing Tex. Gov't Code §§ 423.002, 423.003, 423.004, 423.0045, 423.0046, and 423.006.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment, (Dkt. 65), is **DENIED**.

**IT IS FURTHER ORDERED** that ETR's motion to intervene, (Dkt. 60), is **DENIED**.

**IT IS FINALLY ORDERD** that TAB and RCFP's motion for leave to file amicus brief, (Dkt. 71), is **GRANTED**. All other relief is denied.[5]

**SIGNED** on March 28, 2022.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[5] Plaintiffs also seek attorney's fees. (*See* Pls.' Mot. Summ. J., Dkt. 63, at 47). The Court expresses no opinion as to this issue and will entertain arguments by the parties in further briefing if they wish to pursue this claim.

22-50337.1250

Tab 4: Final Judgment (ROA.1264)

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NATIONAL PRESS PHOTOGRAPHERS ASSOCIATION, TEXAS PRESS ASSOCIATION, and JOSEPH PAPPALARDO, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:19-CV-946-RP |
| STEVEN MCCRAW, *in his official capacity as Director of Texas Department of Public Safety*; DWIGHT MATHIS, *in his official capacity as Chief of the Texas Highway Patrol*; and WES MAU, *in his official capacity as District Attorney of Hays County, Texas*, | § § § § § § § § | |
| Defendants. | § | |

## FINAL JUDGMENT

On March 28, 2022, the Court issued an order granting Plaintiffs' motion for summary judgment. (Dkt. 74). As nothing remains to resolve, the Court renders Final Judgment pursuant to Federal Rule of Civil Procedure 58.

**IT IS ORDERED** that the case is **CLOSED**.

**IT IS FURTHER ORDERED** that Plaintiffs shall file a motion for attorney's fees and a bill of costs, if any, no later than April 27, 2022.

**SIGNED** on April 13, 2022.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

On September 16, 2022, these record excerpts were served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Lanora C. Pettit
LANORA C. PETTIT