No. 22-50337

# United States Court of Appeals
### for the
# Fifth Circuit

NATIONAL PRESS PHOTOGRAPHERS ASSOCIATION, TEXAS PRESS ASSOCIATION, and JOSEPH PAPPALARDO

*Plaintiffs-Appellees/Cross-Appellants,*

- v.-

STEVEN McCRAW, in his official capacity as the Director of Texas Department of Public Safety; DWIGHT MATHIS, in his official capacity as Chief of the Texas Highway Patrol; and WES MAU, in his official capacity as District Attorney of Hays County, Texas,

*Defendants-Appellants/Cross-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION
NO. 1:19-CV-00946-RP

**BRIEF FOR *AMICUS CURIAE* EAST TEXAS RANCH, L.P.,
IN SUPPORT OF DEFENDANTS-APPELLANTS/CROSS-APPELLEES
AND IN FAVOR OF REVERSAL**

Michael E. Lovins
LOVINS | TROSCLAIR, P.L.L.C.
1301 S. Capital of Texas Highway
Building A, Suite 136
Austin, Texas 78746
TEL: (512) 535-1649

ATTORNEYS FOR *AMICUS CURIAE EAST TEXAS RANCH, L.P.*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that–in addition to the persons and entities listed in the appellees Certificate of Interested Persons–the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

The undersigned counsel of record certifies that the following listed persons and entities as described in the *fourth and fifth*[1] sentences of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

## Plaintiffs-Appellees/Cross-Appellants
- National Press Photographers Association
- Mr. Joseph Papalardo
- Texas Press Association
- All members of the National Press Photographers Association and Texas Press Association

## Attorneys for Plaintiffs-Appellees/Cross-Appellants
- Ms. Leslie A. Brueckner
- Ms. Alicia Wagner Calzada

---

[1] This Certificate of Interested Persons contains both specific and generic listings of people and entities "who or which are financially interested in the outcome of the litigation." *See* 5TH CIR. R. 28.2.1.

i

- Mr. James A. Hemphill
- Ms. Leah M. Nicholls
- Mr. Mickey H. Osterreicher
- Ms. Jennifer Pinsof
- Ms. Francesca L. Procaccini
- Mr. David A. Schulz

### Defendants-Appellants/Cross-Appellees
- Dwight Mathis, in his official capacity as Chief of the Texas Highway Patrol
- Wes Mau, in his official capacity as District Attorney of Hays County, Texas
- Steven McCraw, in his official capacity as Director of Texas Department of Public Safety

### Attorneys for Defendants-Appellants/Cross-Appellees
- Mr. Shawn Cowles
- Mr. Grant Dorfman
- Ms. Heather Lee Dyer
- Mr. Christopher D. Hilton
- Mr. Eric Alexander Johnston
- Mr. Ken Paxton
- Mr. Ethan Jacob Ranis
- Mr. Michael A. Shaunessey
- Mr. Brent Webster

### Proposed *Amicus Curiae* East Texas Ranch, L.P.
- Mr. Monty Bennett
- East Texas Ranch, L.P.

### Attorneys for Proposed *Amicus Curiae* East Texas Ranch, L.P.
- Mr. Michael E. Lovins
- Mr. Drew Rogers
- Mr. Kenneth P. Trosclair
- Mr. Stephen C. Christy

**Other Known Interested Persons and Entities**[2]
- Association for Unmanned Vehicle Systems International
- Consumer Technology Association
- Reporters Committee for Freedom of the Press
- Texas Association of Broadcasters
- All members of the Texas Association of Broadcasters, Reporters Committee for Freedom of the Press, Association for Unmanned Vehicle Systems International, and Consumer Technology Association

**Attorneys for Other Known Interested Parties**
- Ms. Sara M. Baxenberg (Association for Unmanned Vehicle Systems International)
- Mr. Boyd Garriott (Association for Unmanned Vehicle Systems International)
- Mr. Robert G. Kirk (Consumer Technology Association)
- Mr. Terry L. Scarborough (Association for Unmanned Vehicle Systems International and Consumer Technology Association)
- Mr. Joshua S. Turner (Association for Unmanned Vehicle Systems International)
- Mr. Paul C. Walter (Texas Association of Broadcasters and Reporters Committee for Freedom of the Press)
- Mr. Eric D. Wong (Texas Association of Broadcasters and Reporters Committee for Freedom of the Press)

**Generic Descriptions of Other Known Interested Parties**
- All persons and entities that perform, or that will perform in the future, journalistic activities in the State of Texas
- All current and future private-property owners in the State of Texas

---

[2] These parties filed respective *amici* briefs with the District Court concerning this matter.

Respectfully submitted,

**LOVINS | TROSCLAIR, P.L.L.C.**

*/s/ Michael E. Lovins*
Michael E. Lovins
State Bar No. 24032555
Michael@LovinsLaw.com
1301 South Capital of Texas Highway
Building A, Suite 136
Austin, Texas 78746
Tel: (512) 535-1649
Fax: (214) 276-1475

**ATTORNEYS FOR PROPOSED**
***AMICUS CURIAE***

# TABLE OF CONTENTS

I.   AUTHORITY AND INTEREST OF *AMICUS CURIAE* ..............................1

II.  SUMMARY OF ARGUMENT ......................................................2

III. ARGUMENT ...................................................................7

    A.   The District Court's Ruling Violates The Takings Clause Because It Constitutes A Taking Of Property That Is Neither For A Public Use, Nor Just Compensation...............................................8

        1.   The District Court's Order Grants A *De Facto* Easement That Constitutes A Taking Under The Fifth Amendment. .......................9

        2.   The Taking Was Not For A Public Use.......................................15

        3.   The Taking Was Not For Just Compensation. ............................18

    B.   The District Court's Order Violates The Due Process Clause Because It Constitutes A Deprivation Of Property Without Due Process of Law.........................................................................19

    C.   The District Court's Order Violates A Constitutionally Proper Balance Of Competing Rights Because It Ignores Takings and Due Process Clause Implications In Favor Of The First Amendment.......................................................................20

    D.   The District Court's Order Violates Core Principles Of Federalism Because It Creates An Exception To Texas Privacy Protections...22

    E.   "Surveillance," As Used In Section 423.003(a), Is Not Unconstitutionally Vague.................................................23

IV. CONCLUSION........................................................................26

REQUEST FOR ORAL ARGUMENT...................................................27

# TABLE OF AUTHORITIES

**Cases**

*Brown v. Legal Found. of Wash.*, 538 U.S. 216, 231-32 (2003) ..............................8

*Cedar Point Nursery v. Hassid*, 141 S.Ct. 2063, 2076 (2021) ..............................10

*City of Austin v. Travis County Landfill Co.*, 73 S.W.3d 234, 240 (Tex. 2002) ..13

*Dolan v. City of Tigard*, 512 U.S. 374, 384 (1994)..................................................11

*Griggs v. Allegheny County*, 369 U.S. 84, 89-90 (1962) ............................... 12, 13

*Kaiser Aetna v. United States*, 444 U.S. 164, 176 (1979) .............................. 11, 12

*Kelo v. City of New London*, 545 U.S. 469 (2005).........................................passim

*Knick v. Township of Scott*, 139 S.Ct. 2162, 2170 (2019).....................................18

*Loeb v. Columbia Township Trustees*, 179, U.S. 472, 490 (1900)...........................8

*Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982) 11, 12, 15

*Monongahela Nav. Co. v. United States*, 148 U.S. 312, 325 (1893) ......................18

*Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 831-32 (1987) ............. 9, 10, 11, 12

*Penn. Cent. Transp. Co. v. City of N.Y.*, 438 U.S. 104, 122 (1978) .......................8

*See Lloyd Corp. v. Tanner*, 407 U.S. 551, 567-68 (1972)..................................5, 21

*Seila Law, L.L.C. v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2208 (2020) ...8

*Stop the Beach Ren. v. Fla. Dept. of Env. Prot.*, 130 S.Ct. 2592, 2597 (2010) ......23

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002).................................................................................................. 12, 18

*United States v. Causby*, 328 U.S. 256, 264 (1946) .................................. 10, 13, 14

*United States v. Cress*, 243 U.S. 316, 328 (1917) .................................................14

*Younger v. Harris*, 401 U.S. 37, 44-45 (1971)........................................................23

**Statutes**

423.0045.......................................................................................................7

423.0046.......................................................................................................7

TEX. GOV'T CODE § 423.002 ............................................................ passim

TEX. GOV'T CODE § 423.003 ............................................. 2, 23, 25, 26

**Other Authorities**

American Heritage Dictionary (2019) ...........................................................24

Black's Law Dictionary (11th ed. 2019)...............................................9, 24

Cambridge Dictionary,
  https://dictionary.cambridge.org/us/dictionary/english/surveillance)
  ................................................................................................................24

Macmillan Dictionary,
  https://macmillandictionary.com/us/dictionary/american/surveillance
  ................................................................................................................24

## I.    AUTHORITY AND INTEREST OF *AMICUS CURIAE*

Pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure, *Amicus Curiae* East Texas Ranch, L.P. ("*Amicus*"), submits to the Court this Brief for *Amicus Curiae* East Texas Ranch, L.P., in Support of Defendants-Appellants/Cross-Appellees and in Favor of Reversal ("*Amicus* Brief") with the consent of all parties.

*Amicus* is a private landowner in the State of Texas that attempted, though unsuccessfully, to intervene into this lawsuit at the District Court for purposes of challenging certain provisions of Chapter 423 of the Texas Government Code ("Chapter 423") because they violate private-property rights under the Takings and Due Process Clauses of the United States Constitution. Specifically, Section 423.002(a) grants permission, under a variety of circumstances, for the invasion of privately-owned airspace with unmanned aerial vehicles ("UAVs"), for neither a public use, nor just compensation, and without due process of law. Ironically, for purposes of this appeal, *Amicus* supports Defendants-Appellants/Cross-Appellees, insofar as they seek reversal, because the District Court's order effectively commits its own version of the same private-property rights violations in favor of *journalists* under the banner of the First Amendment.

1

Because the District Court's Order extensively discusses First Amendment jurisprudence, *Amicus* has little doubt that the parties will offer ample argument regarding those issues. Rather, *Amicus* intends to illuminate the *private-property* implications of the District Court's Order and, thereby, bring to the Court's attention the respective rights infringed by it.

*Amicus'* chief argument may be summarized as follows: the First Amendment right of journalists to fly UAVs to conduct surveillance of individuals and privately-owned real property, if it even exists, does not extend to flying UAVs *into* privately-owned airspace used for only a private purpose.

For these reasons, *Amicus* holds an interest and respectfully submits this *Amicus* Brief for the Court's consideration.

## II.    SUMMARY OF ARGUMENT

Chapter 423 outlaws the use of a UAV "to capture an image of an individual or privately owned real property in this state with the intent to conduct surveillance on the individual or property captured in the image." TEX. GOV'T CODE § 423.003(a). However, Chapter 423 also exempts several

classes of UAV users from these prohibitions, *see* Tex. Gov't Code § 423.002(a), and thereby grants a variety of *de facto* easements into privately-owned air space.[3] In several instances, these *de facto* easements violate the Fifth Amendment's Takings Clause and the Fourteenth Amendment's Due Process Clause (*i.e.*, takings of private property for neither a public use, nor just compensation, and without due process of law).

Those issues are not directly before the Court, but their underlying rationale still requires consideration in principle because the District Court's Order, in effect, produces the same infringement on private-

---

[3] The language of Section 423.002(a) does not expressly confer a right to fly UAVs into privately-owned airspace. In truth, it offers no guidance whatsoever as to where UAVs can or cannot be flown. It merely prefaces each exception with "[i]t is lawful to capture an image using an unmanned aircraft in this state . . ." Tex. Gov't Code § 423.002(a). However, the nature of the exempted classes *presumes* an invasion into privately-owned airspace because the purposes for which the statute permits UAV surveillance reasonably and necessarily requires as much. For example, Section 423.002(a)(3) permits UAV surveillance as part of a U.S. military operation. It would be nonsensical for the U.S. military, in the commencement of an otherwise lawful operation, to be limited to flying a UAV over White-acre when surveilling Black-acre. The same holds true for law-enforcement operations under Sections 423.002(a)(7), (8), and (9); hazardous-material spills (or suspected spills) under Section 423.002(a)(10); fire suppression under Section 423.002(a)(11); or rescue efforts under Section 423.002(a)(12). Likewise, for almost all of the less-extreme exemptions under Section 423.002(a), the purposes for which those scenarios trigger permission for UAV surveillance cannot be fully realized unless they also permit invasion into privately-owned airspace. Accordingly, Section 423.002(a) presumes, and indeed, *expects*, that privately-owned airspace will be invaded. Therefore, the statute inherently gives permission to do the same and, thereby, grants *de facto* easements in favor of those exempted classes.

property rights in favor of *journalists*. That is, by ruling that the First Amendment prohibits the State of Texas from excluding journalists from the exempted classes of UAV users under Section 423.002(a), *see, generally,* *Nat'l Press Photographers Ass'n v. McCraw*, No. 1:19-CV-00946-RP, at *15-24 (W.D.Tex. March 28, 2022), the District Court has granted a *de facto* easement[4] that similarly violates the Takings and Due Process Clauses under the Fifth Amendment.

Stated differently, whatever First Amendment right journalists may have, if any, to fly UAVs to conduct surveillance of individuals and privately-owned real property does not extend to flying UAVs *into* privately-owned airspace that is used for only a private purpose. Accordingly, by failing to consider private-property implications, the District Court entered its Order in a First Amendment vacuum.

Indeed, the District Court's Order acknowledges that *Amicus* "may have viable claims [with respect to some of Chapter 423's exempted classes

---

[4] The District Court's Order, in effect, synonymizes journalists with the exempted classes of UAV users under Section 423.002(a) for purposes conferring the same rights enumerated thereunder. Therefore, the District Court's Order necessarily presumes that journalists will invade privately-owned airspace with UAVs and thereby, giving permission to do the same, grants a *de facto* easement thereunder. *See, cf.*, Footnote 1.

being a violation of constitutional private-property rights]." *Id*. at 30. But if it "may have viable claims" with respect to these exempted classes, then, by logical extension, it "may [also] have viable claims" with respect to journalists. Accordingly, due consideration of the Takings and Due Process Clauses, in conjunction with the First Amendment, is of paramount importance because of the categorical nature of these types of rights.[5] When these fundamental rights must compete in a constitutional thumb war, *something's gotta give*. And when the private land (and accompanying airspace) at issue is used for only a private purpose, private-property rights must win the day.[6] *See Lloyd Corp. v. Tanner*, 407 U.S. 551, 567-68 (1972). However, the District Court's Order fails to consider these implications and, thereby, unconstitutionally sacrifices private-property rights on the altar of free speech.

---

[5] *See* Vicki C. Jackson, *Constitutional Law in an Age of Proportionality*, 124 Yale L.J. 3094, 3166-69 (2015) (suggesting that the conceptual structure of both the Fifth Amendment's Takings Clause and the First Amendment's free speech protections sets apart these respective rights as types that are doctrinal, categorical, and emblematic).

[6] This is especially true given the rise in media outlets in recent years. Otherwise, anyone with a camera drone and a YouTube channel can conceivably invade a neighbor's airspace in the name of journalism.

Further, the District Court's Order states that the State of Texas has "alternative means" through "a variety of tools to protect the privacy and private property of Texans from overly intrusive or dangerous drone use without Chapter 423" (*e.g.*, Texas criminal trespass statute). *Nat'l Press Photographers Ass'n*, 1:19-CV-00946-RP, at *22. However, these "alternative means" may be dead on arrival because Chapter 423, at least arguably, creates massive exceptions thereto with respect to UAV use. That is, the exempted classes of UAV users can arguably trespass into privately-owned airspace with UAVs. *See* Tᴇx. Gᴏᴠ'ᴛ Cᴏᴅᴇ § 423.002(a) (without indicating where UAVs can and cannot be flown, the statute states with respect to the exempted classes, "[i]t is lawful to capture an image using an unmanned aircraft in this state . . ."). And now, pursuant to the District Court's Order, *journalists* can arguably disregard these same Texas privacy protections, and invade privately-owned airspace, willy-nilly, under the banner of the First Amendment. To this end, the District Court's Order constitutes a federal circumvention of state law in violation of core principles of federalism.

Lastly, the District Court's Order states that "surveillance," as used in Chapter 423 is unconstitutionally vague because of unclarity as to whether

6

it includes and, therefore, prohibits journalism, *see Nat'l Press Photographers Ass'n*, 1:19-CV-00946-RP, at *25. The District Court erred in holding that "surveillance" is unconstitutionally vague, and implicitly presumed that "journalism" is a well-defined term. Indeed, there are a variety of activities encased in the discipline of journalism, and whether a given activity is prohibited will depend on whether the *specific facts* surrounding a *specific activity* invoke the common meaning of "surveillance."

For these reasons, which are further detailed below, the District Court's Order should be reversed.

## III.   ARGUMENT

The District Court's Order (i) violates the Takings Clause under the Fifth Amendment; (ii) violates the Due Process Clause under the Fifth Amendment; (iii) violates a constitutionally proper balance of competing rights; (iv) violates core principles of federalism; and (v) incorrectly holds that "surveillance," as used in Section 423.003(a), is unconstitutionally vague.[7]

---

[7] The District Court's Order also holds that the use of "commercial purpose" in Sections 423.0045 and 423.0046 is unconstitutionally vague. Sections 423.0045 and 423.0046 concern the use of UAVs over correctional facilities, detention facilities, critical infrastructure facilities (*i.e.*, power plants, petroleum refineries, natural gas facilities,

**A. The District Court's Ruling Violates The Takings Clause Because It Constitutes A Taking Of Property That Is Neither For A Public Use, Nor Just Compensation.**

The federal government cannot take private property except for a "public use" and "just compensation." *See* U.S. CONST. amend. V; *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 231-32 (2003).

The first question is whether there has been a taking of property within the meaning of the Fifth Amendment. *Penn. Cent. Transp. Co. v. City of N.Y.*, 438 U.S. 104, 122 (1978). If a taking has occurred, then the inquiry shifts to whether it was for a public use and just compensation. *See, generally, Kelo v. City of New London*, 545 U.S. 469 (2005) (public use); *Penn. Cent. Transp. Co.*, 438 U.S. at 122 (just compensation).

In this case, the District Court's order effectuates a taking, but not for public use or for just compensation.

---

steelmaking facilities, etc.), and sports venues. *Amicus* does not address this issue because (i) it does not concern *Amicus'* interest in this case; and (ii) under the doctrine of severability, the general privacy protections of Chapter 423 should survive even if Sections 423.0045 and 423.0046 are unconstitutionally vague with respect to "commercial purpose." *See Seila Law, L.L.C. v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2208 (2020) (quoting *Loeb v. Columbia Township Trustees*, 179, U.S. 472, 490 (1900) ("It has long been settled that 'one section of a statute may be repugnant to the Constitution without rendering the whole act void.'")).

1.    **The District Court's Order Grants A *De Facto* Easement That Constitutes A Taking Under The Fifth Amendment.**

a.    ***De Facto* Easement**

An easement is "[a]n interest in land owned by another person, consisting in the right to use or control the land, *or an area above or below it*, for a specific limited purpose . . ." *Easement*, Black's Law Dictionary (11th ed. 2019) (emphasis added). A "primary recognized easement [includes] . . . *a right of light and air . . .*" *Id.* (emphasis added).

Included among easements are governmental actions that result in the "permanent physical occupation" of another's property. *See Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 831-32 (1987). "We think a 'permanent physical occupation' has occurred . . . where individuals are given a permanent and continuous right to pass to and fro, so that the real property may continuously be traversed, even though no particular individual is permitted to station himself permanently upon the premises." *Id.* at 832. In other words, a "permanent physical occupation" that gives rise to an easement depends on the existence of the right to traverse onto another's property, regardless of whether that right is exercised. *See Id.*

One's air rights extend to "at least as much of the space above the ground as he can occupy or use in connection with the land" and do not depend on actual "occup[ancy] in the physical sense." *United States v. Causby*, 328 U.S. 256, 264 (1946). Therefore, any governmental action conferring a right to traverse into any measure of the space above private land that the owner can occupy or use in connection therewith is, by definition, an easement. *See Nollan*, 483 U.S. at 832; *Causby*, 328 U.S. at 264.

And that action need not formally prescribe an easement to meet the legal definition thereof. *See, cf.*, *Cedar Point Nursery v. Hassid*, 141 S.Ct. 2063, 2076 (2021) (the government cannot avoid prohibitions on a taking by avoiding a formal condemnation). In other words, while the District Court's order obviously does not create a formal easement that may be filed with the appropriate clerk, by granting the rights of an easement, it creates a *de facto* easement.

By its ruling that the First Amendment prohibits the State of Texas from excluding journalists from the exempt classes of UAV users under Section 423.002(a), *see, generally*, *Nat'l Press Photographers Ass'n.*, No. 1:19-CV-00946-RP, at *15-24, the District Court's Order places journalists in the exempt classes under Section 423.002(a) for purposes conferring the same

rights enumerated thereunder, namely, the right to invade privately-owned airspace with UAVs. In other words, just like Section 423.002(a) presumes that excepted classes will fly UAVs into privately-owned airspace (*see* Footnote 1) the District Court's Order makes the same presumption with respect to journalists (*see* Footnote 2). Having issued its Order under such a presumption, the District Court effectively conferred "a permanent and continuous right," in favor of journalists, to traverse into privately-owned airspace. *See Nollan*, 483 U.S. at 832.

For these reasons, the District Court's Order grants a *de facto* easement.

### b.    The *de Facto* Easement is a Fifth Amendment Taking

Inherent in an easement is the relinquishment of one's "right to exclude others[, which is] . . . 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.'" *Dolan v. City of Tigard*, 512 U.S. 374, 384 (1994) (quoting *Kaiser Aetna v. United States*, 444 U.S. 164, 176 (1979)). "Such an appropriation [by the government] is perhaps the most serious form of invasion on an owner's property interests." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982). "Moreover, an owner suffers a special kind of injury when a *stranger*

directly invades and occupies the owner's property . . . literally add[ing] insult to injury." *Id*. at 436 (emphasis in original).

Accordingly, an easement created by any government action constitutes a taking of property and triggers protections under the Fifth Amendment. *See Nollan*, 483 U.S. at 831-33; *Kaiser Aetna*, 444 U.S. at 179-80; *see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002) ("Our jurisprudence involving . . . physical takings is as old as the Republic and, for the most part, involves the straightforward application of *per se* rules."); *Loretto*, 458 U.S. at 426 ("We conclude that a permanent physical occupation authorized by government is a taking without regard to the public interests that it may serve. Our constitutional history confirms the rule, recent cases do not question it, and the purposes of the Takings Clause compel its retention.").

Such applies even when, as here, the easement allows a third party to invade privately-owned airspace. In *Griggs v. Allegheny County*, 369 U.S. 84, 89-90 (1962), the Court held that a taking occurred when a county-lessor, which owned and operated an airport, granted to airline-lessees certain easements into nearby privately-owned airspace when landing onto, and taking-off from, its runways. Subsequent cases read *Griggs* and its progeny

as saying that "to rise to the level of a constitutional taking, the overflight-related effects must directly, immediately, and substantially impact the property's surface so that it is no longer usable for its intended purpose." *City of Austin v. Travis County Landfill Co.*, 73 S.W.3d 234, 240 (Tex. 2002) (examining other courts' reading of *Griggs*).

The obvious distinction between *Griggs* and the case-at-bar is that, in *Griggs*, the easements were granted in favor of low-flying airplanes, *see Griggs*, 369 U.S. 84, 89-90, and here, it was granted in favor of UAVs. Low-flying airplanes create noise and even physical damage that impacts the usability of the property beneath them. UAVs enable the invasion of a property owner's privacy on his own land, thus negating the privacy of "private" property. Indeed, the fear of a journalist's invasion with a UAV is enough to nullify that intended purpose altogether. Accordingly, there is no meaningful difference, in the context of the takings question, between low-flying airplanes and surveilling UAVs, as both directly, immediately, and substantially impact the usability of private property.

In *Causby*, 328 U.S. at 258, similar to *Griggs*, a chicken farm was located near a military airport such that aircraft necessarily invaded the farm's airspace when taking off and landing. The Court held that there was

a taking under the Fifth Amendment, and stated that "it is the character of the invasion, not the amount of damage resulting from it, so long as the damage is substantial, that determines the question whether it is a taking." *Id*. at 266 (quoting *United States v. Cress*, 243 U.S. 316, 328 (1917)).

Factors noted for consideration by the *Causby* Court in assessing the character of the invasion included the frequency and altitude of overflights. *See Id*. at 266-67. The frequency and altitude of the overflights were directly connected to the property owner's ability to carry on the purpose of the property, *i.e.*, living and raising chickens. The factual record from the Court of Claims established that the invasion caused chickens to die and the property owners to lose sleep. *Id.*, at 259.

In the case before this Court, the purpose of the private property is, at least in part, privacy. An important reason one owns private property is to live without threat of being observed and to enjoy solitude, either alone or exclusively with others who the property owner desires and permits to come onto the private property. With the *de facto* easement created by the District Court's ruling, the threat of surveilling UAVs is constant. Thus, the character of the *continual threat of privacy invasion*, even if none actually occurs, is, by itself, serious and substantial. The constant threat of legalized

surveillance imposes a constant fear that one may not truly be alone on his or her own private property.

The *de facto* easement granted in the District Court's Order appropriates from private-property owners the right to exclude journalists' UAVs from their airspace. As such, the Order creates an *ongoing and continual threat to privacy*, which has a character that is a "serious form of invasion on an owner's property interests." *See Loretto*, 458 U.S. at 435. Further, this injury is a "special kind of injury," "literally add[ing] insult" thereto, because it allows "a *stranger* [to] directly invade[] and occup[y] the owner's property." *See Id*. at 436 (emphasis in original).

For these reasons, the *de facto* easement granted by the District Court's Order constitutes a taking under the Fifth Amendment.

### 2.    The Taking Was Not For A Public Use.

"[I]t has long been accepted that the sovereign may not take the property of *A* for the sole purpose of transferring it to another private party *B* . . ." *Kelo*, 545 at 477. "[I]t is equally clear that a State may transfer property from one private party to another if future 'use by the public' is the purpose of the taking . . ." *Id*.

In her dissent in *Kelo*, Justice O'Connor powerfully criticized the
majority for allowing the government, in the context of revitalizing a
distressed community, to take and transfer private property from one
owner to another simply because the latter was capable of using it in a
manner more beneficial to the public. *Id*. at 494 (O'Connor, J., dissenting)
("Under the banner of economic development, all private property is now
vulnerable to being taken and transferred to another private owner, so long
as it might be upgraded . . ."). Though the majority disagreed with her
premise, they did agree that "transferring citizen *A*'s property to citizen *B*
for the sole reason that citizen *B* will put the property to a more productive
use . . . [is] an unusual exercise of government power [that] would certainly
raise a suspicion that a private purpose was afoot . . ." *Id*. at 486-87
(majority opinion).

Such is the case here, only worse. Indeed, pursuant to the *de facto*
easement granted under the District Court's Order, the privately-owned
airspace of *citizens A through Z* was effectively transferred to *all journalists*
for only one conceivable public purpose: *news*. Accordingly, it is
journalists, not the public, that enjoy the use of the transferred property,
and the yield is, at best, a "secondary benefit for the public." *See Id*. at 501

(O'Connor, J., dissenting). In truth, news is a *product sold to the public*, and a taking pursuant thereto would be no different than for the apples on citizen *A*'s land if citizen *B* could more efficiently harvest and sell them to a grocery store for public consumption. For this to be constitutionally permissible would "effectively [] delete the words 'for public use' from the Takings Clause of the Fifth Amendment." *Id*. at 494 (O'Connor, J., dissenting).

While privately-owned airspace can be "for public use" in certain contexts (*e.g.*, public overpass), for that to be equated with *news* would be to erect an invisible overpass over *all* private land for the benefit of *all* journalists to produce news from a more engaging camera angle. If the Constitution now permits that, then Justice O'Connor's foreboding prophecy in *Kelo* has certainly come to pass:

> "[T]he fallout from this decision will not be random. The beneficiaries are likely to be those citizens with disproportionate influence and power in the political process, including large corporations and development firms. As for the victims, the government now has a license to transfer property from those with fewer resources to those with more. The Founders cannot have intended this perverse result." *Id*. at 505 (O'Connor, J., dissenting).

17

For these reasons, the taking under the District Court's Order is not for a public use.

### 3.    The Taking Was Not For Just Compensation.

"When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner . . ." *Tahoe-Sierra*, 535 U.S. at 322. Compensation is required no matter how small of a property interest is taken. *Id*. This is to "prevent[] the public from loading upon one individual more than his just share of the burdens of government." *Kelo*, 545 U.S. at 497 (O'Connor, J., dissenting) (quoting *Monongahela Nav. Co. v. United States*, 148 U.S. 312, 325 (1893)).

To *Amicus'* knowledge, no one has paid any compensation to any private-property owner pursuant to the *de facto* easement granted under the District Court's Order. *See Knick v. Township of Scott*, 139 S.Ct. 2162, 2170 (2019) (holding that "[a] Fifth Amendment right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner.").

For these reasons, the taking under the District Court's Order is not for just compensation. Having failed both the public-use and just-compensation requirements, the taking is unconstitutional.[8]

For these reasons, the District Court's Order should be reversed.

## B. The District Court's Order Violates The Due Process Clause Because It Constitutes A Deprivation Of Property Without Due Process of Law.

The federal government cannot deprive any person of private property "without due process of law." *See* U.S. CONST. amend. V.

As shown above, the District Court's Order grants a *de facto* easement, in favor of journalists, to invade privately-owned airspace with UAVs. This easement constitutes a deprivation of property, triggering due-process protections under the Fifth Amendment. *See Id.*

Texas private property owners have seen no process whatsoever pursuant to the District Court's Order, and *Amicus* does not anticipate any

---

[8] The District Court's Order also interprets Chapter 423 in a manner that violates the Takings Clause under Article 1, Section 17, of the Texas Constitution. *See Travis County Landfill Co.*, 73 S.W.3d at 238-240 (the Texas Supreme Court considered "protections from overflight effects . . . under the federal *Causby* standard[, which includes] *Causby*, *Griggs*, and their progeny" because "[t]he federal takings clause is substantially similar [to the state takings clause] . . . [which] has led us . . . to rely on the United States Supreme Court's interpretation of the federal takings clause in construing our [state] takings provision.").

assertion to the contrary. Therefore, the District Court's Order violates the

Due Process Clause and is, therefore, unconstitutional.

For these reasons, the District Court's order should be reversed.

**C. The District Court's Order Violates A Constitutionally Proper Balance Of Competing Rights Because It Ignores Takings and Due Process Clause Implications In Favor Of The First Amendment.**

The District Court's Order states that "as a matter of law, use of

drones to document news is protected expression [under the] First

Amendment." *Nat'l Press Photographers Ass'n*, No. 1:19-CV-00946-RP, at *18.

As a general proposition, *Amicus* does not intend to dispute this assertion

now. *Amicus* objects to this proposition, however, for its failure to

recognize that the right to use drones for news gathering has boundaries,

and those boundaries include the boundaries around private property. The

First Amendment does not compel owners of private property who use

that property nondiscriminatorily only for private purposes to permit

anyone—including journalists—to access that private property.

As the United States Supreme Court stated, "[I]t must be

remembered that the First and Fourteenth Amendments safeguard the

rights of free speech . . . by limitations on *state* action, not on action by the

owner of private property used nondiscriminatorily for private purposes

only." *Tanner*, 407 U.S. at 567 (emphasis in original). "Although accommodations between the values protected by [the First, Fifth, and Fourteenth] Amendments are sometimes necessary, and the courts properly have shown a special solicitude for the guarantees of the First Amendment, this Court has never held that a trespasser or an uninvited guest may exercise general rights of free speech on property privately owned and used nondiscriminatorily for private purposes only." *Id.* at 567-68.

Accordingly, in a case of a journalist using a UAV to invade the airspace above, for example, a private residence used for only a private purpose, the property owner's rights must prevail. *See Id.* But the District Court's Order grants, in effect, *carte blanche* permission for such an invasion in the name of journalism without consideration of Takings or Due Process Clause implications, or the rights of private property owners to exclude others from their property. Therefore, the District Court's Order violates a constitutionally proper balance of competing rights.

For these reasons, the District Court's Order should be reversed.

**D. The District Court's Order Violates Core Principles Of Federalism Because It Creates An Exception To Texas Privacy Protections.**

The District Court's Order states the following:

> "In enacting the law, state legislators claimed the law would protect private property, individual privacy, and critical infrastructure facilities. However, Defendants have failed to establish that alternative means are insufficient to sufficiently protect these interests. Plaintiffs note that 'Defendants have a variety of tools to protect the privacy and private property of Texans from overly intrusive or dangerous drone use without Chapter 423.' The Texas criminal trespass statute; Texas Transportation or Administrative Code; recording and voyeurism statutes; and tort claims including intrusion upon seclusion all have been or could be used to protect the privacy of individuals from UAV recordings." *Nat'l Press Photographers Ass'n*, No. 1:19-CV-00946-RP, at *22 (internal citations omitted).

The District Court's reasoning fails to recognize that Chapter 423 neuters these privacy protections by creating massive exceptions thereto. *See* TEX. GOV'T CODE § 423.002(a). That is, as shown above, the statute presumes that exempt UAV users will invade privately-owned airspace (*see* Footnote 1) and thereby arguably circumvents, for example, the Texas criminal trespass statute. The District Court's Order creates yet another arguable exception in favor of *journalists* (*see* Footnote 2) thereby federally circumventing Texas privacy protections in violation of core principles of

federalism. *See Younger v. Harris*, 401 U.S. 37, 44-45 (1971) ("the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States"); *see also Stop the Beach Ren. v. Fla. Dept. of Env. Prot.*, 130 S.Ct. 2592, 2597 (2010) ("Generally speaking, state law defines property interests.").

For these reasons, the District Court's Order should be reversed.

### E. "Surveillance," As Used In Section 423.003(a), Is Not Unconstitutionally Vague.

As stated above, Chapter 423 outlaws the use of a UAV "to capture an image of an individual or privately owned real property in this state with the intent to conduct surveillance on the individual or property captured in the image." TEX. GOV'T CODE § 423.003(a). "Surveillance" is not defined by the statute, and the District Court's Order holds that its use is unconstitutionally vague because "without knowing what constitutes surveillance it is impossible to know whether one's intention [with respect to journalism] constitutes that prohibited activity." *Nat'l Press Photographers Ass'n*, No. 1:19-CV-00946-RP, at *27.

As an illustration of the term's so-called vagueness, the District

Court's Order includes five dictionary definitions of "surveillance" cited in

Plaintiffs-Appellees' motion for summary judgment[9], focusing on the

inconsistencies between them. *Id.* at 26. In truth, rather, the consistencies

far outshine the inconsistencies such that the common meaning of

"surveillance" is clearly vindicated, namely, *the close or careful observing or*

*watching of a person, place, or thing for the purpose of gathering information or*

*evidence.*[10] *See Id.* And such common meaning with respect to Chapter 423 is

---

[9] "[C]lose observation or listening of a person or place in the hope of gathering evidence." *Nat'l Press Photographers Ass'n*, No. 1:19-CV-00946-RP, at *26 (quoting *Surveillance*, Black's Law Dictionary (11th ed. 2019) (internal quotations omitted).

"[T]he act of observing or the condition of being observed." *Id.* (quoting *Surveillance*, American Heritage Dictionary (2019) (internal quotations omitted).

"[T]he careful watching of a person or place, especially by the police or army, because of a crime that has happened or is expected." *Id.* (quoting, as of July 9, 2021, *Surveillance*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/surveillance).

"[A] watch kept over a person, group, etc., especially over a suspect, prisoner, or the like[;] . . . continuous observation of a place, person, group, or ongoing activity in order to gather information." *Id.* (quoting, as of July 9, 2021, *Surveillance*, Dictionary.com, https://www.dictionary.com/browse/surveillance).

"[T]he process of carefully watching a person or place that may be involved in a criminal activity." *Id.* (quoting, as of July 9, 2021, *Surveillance*, Macmillan Dictionary, https://macmillandictionary.com/us/dictionary/american/surveillance).

[10] The greatest inconsistency lies in the fact that some of these definitions describe the common meaning of "surveillance" within the context of law-enforcement. *See Nat'l Press Photographers Ass'n*, No. 1:19-CV-00946-RP, at *26. However, the plain text of

even more clearly understood because it is specific to the "individual or privately owned real property" of which the UAV-in-question captures an image. *See* TEX. GOV'T CODE § 423.003(a). In other words, Chapter 423 does not generally outlaw an intent to surveil.  However, regrettably, the District Court's Order ignores the obvious, stating that "none of these definitions conclusively includes or excludes journalism." *Id*. at 26.

But therein lies the rub: what does the District Court's Order mean by "journalism"? It gives no examples of specific activities to test against the meaning of "surveillance," and, indeed, presumes that journalism, itself, is the single activity of concern. In truth, journalism is a discipline that encompasses a variety of activities that may or may not be prohibited under Section 423.003(a), *depending on the specific facts*. If the facts show that the indicated activity involves an intent consistent with the common meaning of "surveillance" as applied to Section 423.003(a) – *the close or careful observing or watching of the individual or privately owned real property captured in an image by a UAV, for the purpose of gathering information or*

---

Chapter 423 clearly shows that "surveillance" should not be so narrowly defined because it includes several exemptions for law enforcement. *See* TEX. GOV'T CODE 423.002(a)(7), (8), (9).

*evidence* – then it is prohibited. *See* TEX. GOV'T CODE 423.003(a). If not, then it is permitted.

Whether such a restriction violates the First Amendment is a separate question altogether, which *Amicus* leaves for the parties to advocate (subject to the above-proffered arguments with respect to private-property rights). But one thing is certain: the term "surveillance," as used in Section 423.003(a), is not unconstitutionally vague.

For these reasons, the District Court's Order should be reversed.

## IV.  CONCLUSION

The District Court's Order grants a *de facto* easement into privately-owned airspace in favor of journalists, triggering private-property protections under the Takings and Due Process Clauses. However, such taking was done neither for a public use, nor just compensation, and without due process of law. Further, the District Court's Order strikes a constitutionally improper balance of competing fundamental rights, violates core principles of federalism, and incorrectly holds that "surveillance," as used in Section 423.003(a), is unconstitutionally vague. For these reasons, the District Court's Order should be reversed.

## REQUEST FOR ORAL ARGUMENT

*Amicus* respectfully requests participation in the oral argument of this appeal because the potential consequences on constitutional private-property rights warrant a public hearing.

Dated: September 23, 2022

Respectfully submitted,

**LOVINS | TROSCLAIR, P.L.L.C.**

*/s/ Michael E. Lovins*
Michael E. Lovins
State Bar No. 24032555
Michael@LovinsLaw.com
1301 South Capital of Texas Highway
Building A, Suite 136
Austin, Texas 78746
Tel: (512) 535-1649
Fax: (214) 276-1475

**ATTORNEYS FOR *AMICUS CURIAE***

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Michael E. Lovins*
Michael E. Lovins

Attorney for *Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

I certify that this *Amicus* Brief complies with the type-volume limitation of Rules 29 and 32 of the Federal Rules of Appellate Procedure because it contains 5,549 words, excluding the parts of the brief exempted by Rule 32(f). I further certify that this brief complies with the typeface requirements of Rule 32(a)(5)(A) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Book Antiqua font size 14.

I further certify that this *Amicus* Brief was not authored, either in whole or in part, by counsel for any other parties, and no party or party's counsel contributed money for said authoring. No one other than *Amicus* and its counsel have contributed to this *Amicus* Brief, financially or otherwise.

I further certify that this *Amicus* Brief was submitted with the consent of all parties.

/s/ Michael E. Lovins
Michael E. Lovins

Attorney for *Amicus Curiae*

29