

James A. Hemphill
Board Certified, Civil Appellate Law
Texas Board of Legal Specialization

512.480.5762
512.536.9907 (fax)
jhemphill@gdhm.com

401 CONGRESS AVE., SUITE 2700
Austin, TX  78701-3790

October 2, 2023

**<u>VIA ECF</u>**

Lyle W. Cayce
Clerk of Court
U.S. Court of Appeals for the Fifth Circuit
Office of the Clerk
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, LA 70130

Re:    *National Press Photographers Association v. McCraw et al.*, No. 22-50337, Supplemental Authority Letter Pursuant to Rule 28(j)

Dear Mr. Cayce:

Pursuant to Federal Rule of Appellate Procedure 28(j) and Fifth Circuit Rule 28.4, Plaintiffs-Appellees-Cross Appellants respectfully submit the attached decision in *Jackson v. Wright*, No. 22-40059, 2023 WL 5992750 (5th Cir. Sept. 15, 2023), which clarifies the applicability of *Ex parte Young*.

In *Jackson*, this Court held that a state university's board members were not immune from suit because their general "governing authority" over the university meant they possessed at least a "scintilla of enforcement" over the allegedly unconstitutional policy, even though the board members were not alleged to have been "personally and directly involved with" the challenged policy. *Id.* at *3, 5. Despite the lack of involvement, the existence of authority for the board members to command subordinates to refrain from enforcing the policy was sufficient under *Young*. *Id.* at *3. The Court distinguished earlier cases finding *Young* not to apply as involving state officials with "*no* role whatsoever in the alleged constitutional violations." *Id.*

*Jackson* supports Plaintiffs' contention in their opening brief [Dkt. No. 87] at 25-30 and at oral argument that the district court correctly applied *Young* to all three Defendants. As in *Jackson*, all Defendants have at least a "scintilla of enforcement" over the challenged provisions of Texas Government Code Chapter 423 because

October 2, 2023
Page 2

each has authority either to arrest or to prosecute those who violate the provisions. Defendants McCraw and Mathis also have authority to order the peace officers whom they supervise statewide to refrain from enforcing Chapter 423. Defendants' authority, like the board members' "governing authority" in *Jackson*, distinguishes Plaintiffs' suit from cases in which "the sued state officials had *no* role whatsoever in the alleged constitutional violations." *Jackson*, 2023 WL 5992750 at *3.

Sincerely,

GRAVES, DOUGHERTY, HEARON & MOODY
A Professional Corporation


By: /s/ *James A. Hemphill*
    James A. Hemphill

JAH/ntk
Enclosure
cc:    All counsel of record, *via* ECF

2023 WL 5992750
Only the Westlaw citation is currently available.
United States Court of Appeals, Fifth Circuit.

Timothy JACKSON, Plaintiff—Appellee,

v.

Laura WRIGHT; Milton B. Lee;
Melisa Denis; Mary Denny; Daniel
Feehan; Et al., Defendants—Appellants.

No. 22-40059
|
FILED September 15, 2023

**Synopsis**
**Background:** Professor at public university brought § 1983 action against members of the university's board of regents in their official capacities asserting First Amendment retaliation claim arising from the university's actions in response to graduate and faculty complaints of racist sentiments in an article professor published in the journal he edited. The United States District Court for the Eastern District of Texas, Amos L. Mazzant, J., 2022 WL 179277, denied the board members' motion to dismiss, and they appealed.

**Holdings:** The Court of Appeals, Andrew S. Oldham, Circuit Judge, held that:

[1] board members had the scintilla of enforcement required for *Ex parte Young* to apply to permit professor's federal suit;

[2] board members had more than general duty to see that state laws were implemented, as required for *Ex parte Young* to apply;

[3] *Ex parte Young* exception to sovereign immunity applied to prospective relief sought by professor;

[4] professor alleged both a continuing and future injury sufficient to confer Article III standing; and

[5] professor satisfied causation element of Article III standing.

Affirmed.

West Headnotes (20)

[1] **Federal Courts** Standing

Court of Appeals reviews a district court's ruling on a motion to dismiss for lack of standing de novo.

[2] **Federal Courts** Immunity

Court of Appeals reviews a district court's ruling on a motion to dismiss on sovereign immunity grounds de novo.

[3] **Federal Courts** Suits Against States; Eleventh Amendment and Sovereign Immunity

Sovereign immunity bars private suits against nonconsenting states in federal court.

[4] **Federal Courts** Agencies, officers, and public employees

The sovereign immunity doctrine bars suits in federal court against state actors in their official capacities that are effectively suits against a state.

[5] **Federal Courts** Suits for injunctive or other prospective or equitable relief; Ex parte Young doctrine

**Federal Courts** Agencies, officers, and public employees

The *Ex parte Young* rule permitting federal suits against state actors whose conduct violates federal law is based on the legal fiction that a sovereign state cannot act unconstitutionally, and therefore, when a state actor enforces an unconstitutional law, he is stripped of his official clothing and becomes a private person subject to suit.

**[6]** **Federal Courts** Suits for injunctive or other prospective or equitable relief;  Ex parte Young doctrine

*Ex parte Young* created a narrow doorway through the sovereign immunity defense, and to turn the key on the *Ex parte Young* door, a plaintiff must sue the right defendants and ask for the right remedy.

**[7]** **Federal Courts** Suits for injunctive or other prospective or equitable relief;  Ex parte Young doctrine

**Federal Courts** Agencies, officers, and public employees

Under *Ex parte Young*, which permits federal suits against state actors whose conduct violates federal law, the officers who are sued must have some connection with the enforcement of the challenged law or policy.

**[8]** **Federal Courts** Suits for injunctive or other prospective or equitable relief;  Ex parte Young doctrine

**Federal Courts** Higher education;  colleges and universities

Members of public university's board of regents had the scintilla of enforcement required for *Ex parte Young* to apply to permit professor's federal § 1983 action against the members in their official capacities asserting First Amendment retaliation claim arising from the university's actions in response to graduate and faculty complaints of racist sentiments in an article professor published in the journal he edited, where the board members had governing authority over the university. U.S. Const. Amend. 1; 42 U.S.C.A. § 1983.

**[9]** **Federal Courts** Suits for injunctive or other prospective or equitable relief;  Ex parte Young doctrine

**Federal Courts** Agencies, officers, and public employees

For state officers who are sued to have some connection with the enforcement of the challenged law or policy, as required for *Ex parte Young* to apply to permit federal suits against state actors whose conduct violates federal law, all that is required is a mere scintilla of enforcement by the relevant state official with respect to the challenged law.

**[10]** **Federal Courts** Suits for injunctive or other prospective or equitable relief;  Ex parte Young doctrine

**Federal Courts** Higher education;  colleges and universities

Members of public university's board of regents had more than general duty to see that state laws were implemented, as required for *Ex parte Young* to apply to permit professor's federal § 1983 action against the members in their official capacities asserting First Amendment retaliation claim arising from university's actions in response to graduate and faculty complaints of racist sentiments in article professor published in journal he edited, where board members had direct governing authority over the university officials who allegedly continued to violate professor's First Amendment rights, including authority to countermand their decisions, and members also ignored letter professor wrote to board's chair notifying them of his removal from the journal and seeking relief from the board for ongoing First Amendment violations. U.S. Const. Amend. 1; 42 U.S.C.A. § 1983.

**[11]** **Federal Courts** Suits for injunctive or other prospective or equitable relief;  Ex parte Young doctrine

**Federal Courts** Agencies, officers, and public employees

For state officials who are sued to have some connection with the enforcement of the challenged law or policy, as required for *Ex parte Young* to apply to permit federal suits against state actors whose conduct violates federal law, an official must have more than the general duty to see that the laws of the state are implemented.

[12]  **Federal Civil Procedure** ⚬ Anticipating defenses

**Federal Courts** ⚬ Objections, proceedings, and determination

State sovereign immunity from suit in federal court is an affirmative defense, and plaintiffs are not required to anticipate or plead around affirmative defenses.

[13]  **Federal Courts** ⚬ Suits for injunctive or other prospective or equitable relief; Ex parte Young doctrine

**Federal Courts** ⚬ Higher education; colleges and universities

*Ex parte Young* exception to sovereign immunity applied to prospective relief sought by public university professor in his federal § 1983 suit against members of public university's board of regents in their official capacities, asserting First Amendment retaliation claim arising from university's actions in response to complaints of racist sentiments in article professor published in journal he edited, which defended a music theorist from charges of racism by Black professor from different college; professor sought declaration that university and its administrators were violating his constitutional rights by retaliating against him, and he requested injunctive relief restraining the members from taking future actions that violated his rights. U.S. Const. Amend. 1; 42 U.S.C.A. § 1983.

[14]  **Federal Courts** ⚬ Suits for injunctive or other prospective or equitable relief; Ex parte Young doctrine

**Federal Courts** ⚬ Agencies, officers, and public employees

Under *Ex parte Young*, which permits federal suits against state actors whose conduct violates federal law, a court is permitted to command a state official to do nothing more than refrain from violating federal law.

[15]  **Federal Courts** ⚬ Suits for injunctive or other prospective or equitable relief; Ex parte Young doctrine

**Federal Courts** ⚬ Agencies, officers, and public employees

The *Ex parte Young* doctrine, which permits federal suits against state actors whose conduct violates federal law, applies only to prospective relief and does not permit judgments against state officers declaring that they violated federal law in the past.

[16]  **Federal Civil Procedure** ⚬ In general; injury or interest

**Federal Civil Procedure** ⚬ Causation; redressability

For Article III standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. U.S. Const. art. 3, § 2, cl. 1.

[17]  **Federal Civil Procedure** ⚬ In general; injury or interest

To establish injury in fact, as required for Article III standing, a plaintiff must show he suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. U.S. Const. art. 3, § 2, cl. 1.

[18]  **Injunction** ⚬ Persons entitled to apply; standing

Where a plaintiff is seeking prospective relief and not damages, he must allege a continuing (i.e., ongoing) or imminent future injury to establish Article III standing. U.S. Const. art. 3, § 2, cl. 1.

[19]  **Civil Rights** ⚬ Employment practices

Public university professor alleged both a continuing and future injury sufficient to confer Article III standing for him to seek prospective relief from members of university's board of regents in their official capacities on his First Amendment retaliation claim in § 1983 action arising from university's actions in response to graduate and faculty complaints of racist sentiments in article professor published in journal he edited; professor alleged that he had been and continued to be banned by university from any continuing involvement with the journal, that if he took action to publish the work that was currently "on ice," he would face negative consequences imposed by university officials, and that his department chair told him university would eliminate resources previously provided to the journal. U.S. Const. art. 3, § 2, cl. 1; U.S. Const. Amend. 1; 42 U.S.C.A. § 1983.

**[20]   Civil Rights**   Employment practices

In order for public university professor to satisfy causation element of Article III standing to bring § 1983 action against the members of university's board of regents in their official capacities seeking prospective relief from members' alleged First Amendment retaliation, all that professor had to allege was that his First Amendment injuries from university's actions in response to graduate and faculty complaints of racist sentiments in article professor published in journal he edited were fairly traceable to the board members, not that they directly caused his injuries. U.S. Const. art. 3, § 2, cl. 1; U.S. Const. Amend. 1; 42 U.S.C.A. § 1983.

Appeal from the United States District Court for the Eastern District of Texas, USDC No. 4:21-CV-33, Amos L. Mazzant, U.S. District Judge

**Attorneys and Law Firms**

Jonathan F. Mitchell, Austin, TX, Michael Thad Allen, Allen Harris, P.L.L.C., Quaker Hill, CT, for Plaintiff—Appellee.

Lanora Christine Pettit, Office of the Texas Attorney General, Solicitor General Division, Austin, TX, Beth Ellen Klusmann, Esq., Office of the Texas Attorney General, Austin, TX, for Defendants—Appellants.

Before Elrod, Ho, and Oldham, Circuit Judges.

**Opinion**

Andrew S. Oldham, Circuit Judge:

**\*1** Timothy Jackson, a professor at the University of North Texas, sued eight members of the UNT Board of Regents in their official capacities for First Amendment retaliation. The Board defendants moved to dismiss under Rule 12(b)(1). The district court denied their motion to dismiss. We affirm.

I.

UNT's Board is composed of nine members who are appointed by the Texas Governor and confirmed by the Texas Senate. The Board serves as the governing body for UNT. And the Board has delegated to each constituent institution the obligation to "publish policies and procedures specifically related to faculty hiring, promotion, tenure, evaluation, leave, compensation, governance, discipline, a faculty grievance process, and such other policies and procedures required by these Regents Rules." The Univ. of N. Tex. Sys. Bd. of Regents Rules, Rule 6.201 (2007), https://www.untsystem.edu/boardregents/documents/rr/rr_06.200_polic y_manual.pdf (last visited Sept. 15, 2023) [hereinafter "UNT Regents Rules"].

Jackson is a music theory professor at UNT and a leading expert on the Austrian music theorist Heinrich Schenker. He is also the director of the Center for Schenkerian Studies and the founder of the *Journal of Schenkerian Studies*. The Journal is funded by UNT and published by the UNT Press.

In July 2020, the Journal hosted a symposium. Professor Jackson published an article defending Schenker against charges of racism by Phillip Ewell, a black professor from a different college. A few days after the Journal published its symposium issue, several UNT graduate students circulated a statement condemning Jackson, criticizing the Journal for "platforming" Jackson's "racist sentiments," and lamenting that Jackson's "past and present" "actions" "are particularly racist and unacceptable." ROA.298– 99. A Multiple UNT

faculty members signed a statement that endorsed the graduate students' letter and stated that certain articles in the symposium were "replete with racial stereotyping and tropes." ROA.300–31.

John Richmond, the Dean of the College of Music, announced that the College of Music would be launching a "formal investigation into the conception and production of" the Journal's symposium issue. ROA.336. UNT Provost Jennifer Cowley appointed an ad hoc panel of five faculty members who currently served or had served as scholarly journal editors.

After interviewing eleven individuals (including Jackson and others involved in the editorial process), the panel produced a report. The report concluded that the Journal did not observe "the standards of best practice in scholarly publication" in producing the symposium issue and made recommendations that the Journal should implement. ROA.293. Specifically, the panel found a power disparity between the Journal's editor (typically a graduate student) and the editorial advisor (Jackson). The panel also concluded that the Journal had not followed clear procedures for the symposium and erred by not inviting Ewell to respond.

When she received the panel's report, Provost Cowley sent Jackson a letter instructing him to "develop of a plan to address the recommendations" and submit that plan to Chairman Benjamin Brand, the Chair of the Music Department, and Dean Richmond for approval. She gave Jackson a deadline to submit his plan. ROA.359. One week prior to the deadline, Chairman Brand met with Jackson. Chairman Brand informed Jackson that he could not "support a plan according to which [Jackson] would remain involved in the day-to-day operations of the journal." ROA.361. According to Jackson's account of the conversation:

> *2 Dr. Benjamin Brand (Professor Jackson's department chair) informed Professor Jackson that he would be removed from the Journal and that the university would eliminate resources previously provided to the Journal and Center for Schenkerian Studies. ROA.30.

Jackson timely submitted his plan. In the plan, he made several recommendations on how the Journal could be improved and agreed with the panel that the Journal editor should be a "full time, tenured faculty member whether at UNT or at an outside institution." ROA.537. After Jackson submitted his plan, Provost Cowley, in consultation with Dean Richmond and Chairman Brand, charged the department with launching a national search for a new editor-in-chief for the Journal who is a full-time tenured faculty member. That editor would then determine the membership of the editorial board (including Jackson's possible role in it) and policies for future publications.

Jackson sued the Board defendants, among others, alleging a First Amendment retaliation claim under 42 U.S.C. § 1983. As against the Board defendants, Jackson sought only injunctive and declaratory relief. The Board defendants moved to dismiss based on sovereign immunity, lack of standing, and failure to state a claim. The district court concluded that it needed evidence of Jackson's status with the Journal before it could rule. At an evidentiary hearing, in October 2021, Jackson stated that the Journal has been "essentially on ice" since 2020 and has not published since the symposium issue. ROA.945. He testified that he was "removed from the journal completely" and has had "nothing further to do with the [J]ournal" since the panel's report. ROA.948. Dean Richmond (who also testified) agreed that the Journal was "on pause" but claimed this was only until a new editor-in-chief could be found. ROA.997–99.

The district court denied the defendants' motions to dismiss. The Board defendants immediately appealed the denial of sovereign immunity under the collateral order doctrine. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (collateral order doctrine allows immediate appellate review of order denying sovereign immunity). They also appealed the denial of dismissal for lack of standing. *See Escobar v. Montee*, 895 F.3d 387, 391 (5th Cir. 2018) (appellate court has pendant appellate jurisdiction over other parts of the appeal that are "inextricably intertwined" with part of appeal authorized by the collateral order doctrine).

[1] [2] We review the district court's standing and sovereign immunity rulings *de novo. See City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019).

II.

We first (A) conclude sovereign immunity does not bar Jackson's First Amendment claim. Then we (B) conclude Jackson has standing to bring his First Amendment claim against the Board defendants.

A.

**[3] [4] [5]** "Sovereign immunity bars private suits against nonconsenting states in federal court." *Haverkamp v. Linthicum*, 6 F.4th 662, 669 (5th Cir. 2021) (per curiam). The doctrine also bars "suits against state actors in their official capacities that are effectively suits against a state." *Ibid.* As we have explained:

> The Supreme Court, however, carved out an exception to state sovereign immunity in *Ex parte Young*, 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908), permitting suits against state actors whose conduct violates federal law. The rule is based on the legal fiction that a sovereign state cannot act unconstitutionally, and therefore, when a state actor enforces an unconstitutional law, he is stripped of his official clothing and becomes a private person subject to suit.

**\*3** *Ibid.* (quotation omitted).

**[6]** *Ex parte Young* created a narrow doorway through the sovereign immunity defense. To turn the key on the *Ex parte Young* door, a plaintiff must sue the right defendants and ask for the right remedy. Here, Jackson has done both.

**[7]** First, the right defendants. Under *Ex parte Young*, the officers who are sued must have "some connection with the enforcement" of the challenged law or policy. *Ex parte Young*, 209 U.S. at 157, 28 S.Ct. 441. But how much of a connection is needed? As this Court has repeatedly observed, "our circuit has struggled to define this 'connection' requirement." *Lewis v. Scott*, 28 F.4th 659, 663 (5th Cir. 2022); *Tex. All. for Retired Ams. v. Scott* ("*TARA*"), 28 F.4th 669, 672 (5th Cir. 2022) (same observation); *Tex. Democratic Party v. Abbott* ("*TDP*"), 978 F.3d 168, 179 (5th Cir. 2020) (noting that the Fifth Circuit has not "spoken with conviction about all the relevant details of the 'connection' requirement"). Even so, "some guideposts have emerged." *TARA*, 28 F.4th at 672. Two are relevant here.

**[8] [9]** *Guidepost 1*. All that is required is a mere "scintilla of 'enforcement' by the relevant state official with respect to the challenged law." *City of Austin*, 943 F.3d at 1002; *cf. Whole Woman's Health v. Jackson*, 595 U.S. 30, 142 S. Ct. 522, 534, 211 L.Ed.2d 316 (2021) ("While *Ex parte Young* authorizes federal courts to enjoin certain state officials from enforcing state laws, the petitioners do not direct this Court to *any* enforcement authority the attorney general possesses in connection with S.B. 8 that a federal court might enjoin him from exercising." (emphasis added)). Here, the Board defendants have the required "scintilla of enforcement" due to their governing authority over UNT. *See supra* UNT Regents Rules (the Board defendants have the ultimate "governance" authority at UNT). The Board defendants nowhere deny that their governing authority satisfies the "scintilla of enforcement" standard; in fact, they never even acknowledge that standard in their opening brief.

**[10] [11]** *Guidepost 2*. We further know that an official must have more than "the general duty to see that the laws of the state are implemented." *City of Austin*, 943 F.3d at 999–1000 (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)); *accord TARA*, 28 F.4th at 672. For example, a state attorney general lacks an *Ex parte Young* enforcement nexus based on his "general duty to enforce the law." *TDP*, 978 F.3d at 181. And a governor's role in promulgating an executive order alone is not sufficient. *See Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020); *see also Haverkamp*, 6 F.4th at 670 (a committee's authority to formulate and promulgate a policy also is not sufficient). But those cases are distinguishable. In those cases, the sued state officials had *no* role whatsoever in the alleged constitutional violations—not even a supervisory role over the individuals who were allegedly violating constitutional rights. Contrariwise here, the Board defendants' have direct governing authority over the UNT officials that are allegedly continuing to violate Jackson's First Amendment rights, including authority to countermand the decisions of the subordinate UNT officials. And in addition to their direct supervisory authority over the UNT officials who took the actions at issue, the Board defendants themselves ignored a letter Jackson wrote to the Chair of the Board, notifying them of his removal from the Journal and seeking relief from the Board for the ongoing violation of his First Amendment rights.

**\*4 [12]** The Board defendants' principal counterargument is that Jackson has "not alleged facts demonstrating a connection between the Board defendants and any alleged First Amendment retaliation." Blue Br. 23. But state sovereign immunity is an affirmative defense, and plaintiffs are not required to anticipate or plead around affirmative defenses. *See Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Rather, it was the Board defendants' obligation to raise the defense. We cannot say at this juncture that Jackson impermissibly sued defendants protected by state sovereign immunity.

 **[13] [14] [15]** Second, the right remedy. Under *Ex parte Young*, a court is permitted to "command[ ] a state official to do nothing more than refrain from violating federal law." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255, 131 S.Ct. 1632, 179 L.Ed.2d 675 (2011). The *Ex parte Young* doctrine "applies only to prospective relief" and "does not permit judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct*, 506 U.S. at 146, 113 S.Ct. 684. Here, Jackson properly requests only prospective relief:

> i. declare that the university and its administrators *are violating* Professor Jackson's rights under the First and Fourteenth Amendments by retaliating against him for his criticism of Phillip Ewell.
>
> ii. enjoin the members of the Board of Regents, along with their employees and subordinates, *from taking* any adverse action against Professor Jackson in response to the publication of the symposium or his criticisms of Professor Ewell.

ROA.30. Jackson's request for declaratory relief is focused on the legality of the university's current actions, not its past behavior. And Jackson's request for injunctive relief is also prospective given it would restrain the Board defendants from taking future actions that violate Jackson's rights. *See Stewart*, 563 U.S. at 255, 131 S.Ct. 1632 ("[W]hen a federal court commands a state official to do nothing more than refrain from violating the law, he is not the State for sovereign-immunity purposes.").

In sum, Jackson has "allege[d] an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002). Thus, at the motion to dismiss stage, sovereign immunity does not bar Jackson's First Amendment claim against the Board defendants.

B.

 **[16]** Jackson also has standing to bring his First Amendment claim. For Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The Board defendants concede that redressability runs with causation, *see* Blue Br. 38 n.15, and we agree on the facts of this case. So we turn first to injury in fact and then to causation.

 **[17] [18]** To establish injury in fact, Jackson must show he "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Spokeo*, 578 U.S. at 339, 136 S.Ct. 1540 (quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130). Because Jackson is seeking prospective relief and not damages, he must allege a continuing (*i.e.*, ongoing) or "imminent" future injury to establish standing. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." (quotation omitted)).

 **\*5 [19]** Here, Jackson alleges a continuing injury—that he has been and continues to be banned by UNT from any continuing involvement with the Journal. Jackson "can no longer publish scholarship in the Journal that he considers a trademark of his life's work, and if he took action to publish the work that is currently 'on ice,' he would face negative consequences imposed by UNT officials." ROA.892. Jackson also alleges a future injury. Specifically, he alleges that the chair of his department told him that "the university would eliminate resources previously provided to the Journal and the Center." ROA.30. At the motion to dismiss stage where we must accept all Jackson's allegations as true, he has plainly alleged both a continuing and a future injury sufficient to confer standing for him to seek prospective relief.

 **[20]** Next, causation. The second standing inquiry is whether these injuries are "fairly traceable" to the Board defendants. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014) ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct."). The traceability and *Ex parte Young* issues discussed above involve similar questions. *Texas Democratic Party v. Abbott* (*"TDP"*), 961 F.3d 389, 401 (5th Cir. 2020) (noting the "significant overlap between our standing and [*Ex parte*] *Young* analyses" (quotation omitted)). And for the reasons discussed in the preceding section, we conclude the alleged ongoing actions of the UNT officials in removing Jackson from his role with the Journal and promising to eliminate

resources previously provided to the Journal are "fairly traceable" to the Board defendants.

The Board defendants argue that Jackson needed to allege specifically that they were personally and directly involved with the Journal or the panel investigation. But all Jackson needs to allege under Article III is that his First Amendment injuries are "fairly traceable" to the Board defendants—not that the Board defendants directly caused his injuries. *See Lexmark*, 572 U.S. at 134 n.6, 134 S.Ct. 1377.[*]

---

[*] Given our conclusion that the district court has subject matter jurisdiction over Jackson's First Amendment claim, all agree that the district court also has supplemental jurisdiction over Jackson's defamation claim.

AFFIRMED.

**All Citations**

--- F.4th ----, 2023 WL 5992750

End of Document © 2023 Thomson Reuters. No claim to original U.S. Government Works.